[No. 1318, August 29, 1910.]

TERRITORY OF NEW MEXICO, on the Relation of the City of Albuquerque, and of Simon Stern, Treasurer of Said City of Albuquerque, Relators, Appellee, v. E. PINNEY, as Treasurer and ex-Officio Collector of the County of Bernalillo, Territory of New Mexico, Appellant.

### SYLLABUS (BY THE COURT.)

1. Chapter 57 of the Laws of 1909, which provides that, "all delinquent taxes," for certain years shall be distributed to the general county fund and general school fund of the respective counties in which they are collected, does not include taxes levied for city purposes.

Appeal from the District Court for Bernalillo County. Affirmed.

GEORGE S. KLOCK for Appellant.

The power of a state legislature over public municipal revenues. Laws of 1907, chapter 65, section 2; Laws of 1909, chapter 57; Dillon, vol. 2, secs. 766, 767; Gaslight Co. v. Clarke, 95 U. S. 654; Hunter et al, v. City of Pittsburg, 207 U. S. 177, 179; Worcester v. Worcester Consolidated St. Ry. Co., 196 U. S. 548; 28 Cyc. Law and Proc. 310; People v. Morris, 13 Wend., N. Y. 330, 331, 337; Blanding v. Burr, 13 Cal. 351; State ex rel. St. Louis County Court, 34 Mo. 570, 572; Miller on Constitution

524, 530; Mitchell v. Clarke, 110 U. S. 643; City of St. Louis v. Thomas W. Shields, 52 Mo. 351.

Error was committed by the court in entering judgment without notice to the attorney for the appellant. C. L. 1897, sec. 2685, sub-sec. 136; Beakes v. DaCumha, 126 N. Y. 297; Pearson v. Lovejoy, 53 Barbour, N. Y. 407.

H. J. COLLINS for Appellee.

The legislature is without power to divert money derived from taxes levied for city purposes to county purposes. 24 St. Laws 170, ch. 818, 7 Fed. St. Ann. 264; Cooley on Taxation 83, 183, 184, 230; in re Washington St., 69 Pa. St. 352, 363; McFadden v. Longham, 58 Tex. 79; Busch v. Board of Supervisors, 159 N. Y. 212; State v. Switzler, 143 Mo. 287; Loan Association v. Topeka, 20 Wall. 654, 663; Freeland v. Hastings, 10 Allen, 570, 575; Allen v. Jay, 60 Me. 124; Steiner v. Sullivan, 74 Minn. 498; Hammett v. Philadelphia, 65 Pa. St. 146; Hansen et al, v. Vernon et al, 27 Ia. 28; Hammett v. Philadelphia, 65 Pa. St. 151; Hutchinson v. Ozark Land Co., 57 Ark. 554; Callum v. City of Saginaw, 50 Mich. 7; Town of Milwaukee v. City of Milwaukee, 12 Wis. 103; State v. Haben, 22 Wis. 661; People v. Parks, 58 Cal. 622; Gas Co. v. Clark, 95 U. S. 654; Hunter et al, v. City of Pittsburg, 207 U. S. 177; Worcester v. Worcester Con. St. Ry. Co., 196 U. S. 548; 28 Cyc. Law and Proc. 311, 313; People v. Coler, 166 N. Y. 1, 82 Am. St. Rep. 605; People v. Morris, 13 Wend., N. Y. 330, 331, 337; State ex rel. St. Louis Co. Ct., 34 Mo. 570; Hooper v. Emery, 13 Me. 375.

All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression or an absurd consequence. U. S. v. Kirby, 7 Wallace 486, 487; Willis v. The Eastern Trust and Banking Co., 169 U. S. 295; Brown v. Walker, 161 U. S. 819; Riggs v. Ralmer, 12 Am. St. Rep. 819; U. S. v. Healey, 160 U. S. 145; Pennoyer v. McConnaughy, 140 U. S. 23; U. S. v. Moore, 95 U. S. 763; Stuart v. Laird, 1 Cranch 299, 309; Schools Executors v. Fauche, 138 U. S. 572; Wilkinson v. Leland, 2 Pet. 627; Sedgwick

Const. and Stat. Constr. 196; Oates v. National Bank, 100
U. S. 244; Bird v. United States, 187 U. S. 124; Hawaii
v. Maukichi, 190 U. S. 212; Brown v. Duchesne, 19 How-
ard 194; Heydenfeldt v. Dauey Co., 93 U. S. 638.

The general language of the statute will always be re-
stricted in its effect where necessary to meet the intention
of the legislature.   U. S. v. Fisk, 3 Wall. 445; 5 Digest
U. S. Sup. Ct. Rep. 5386, 5387, 5404, 5405; Church of
the Holy Trinity v. United States, 143 U. S. 457, 459,
12 Sup. Ct. Rep. 551; Durousseau v. United States, 6
Cranch 307; Washington & I. R. Co. v. Coeur D'Alene R.
& Nav. Co., No. 1, 160 U. S. 77, 16 Sup. Ct. Rep. 231;
Bloomer v. McQuewan, 14 How. 539, 553; Bate Refrige-
rating Co. v. Sulzberger, 157 U. S. 1, 15 Sup. Ct. Rep.
508: Knowlton v. Moore, 178 U. S. 77; McKee v. United
States, 164 U. S. 291, 292.

Authority of cities to levy taxes is limited.   C. L.
1897, secs. 2436, 2442, 2529, 4017, 4021, 4184.

The elementary rule that every reasonable construction
must be resorted to to save a statute from unconstitution-
ality, or as applied in this case, in order to save the statute
and hold it to a legitimate exercise of legislative power.
Hooker v. California, 155 U. S. 64; Insurance Co. v. Jar-
man, 187 U. S. 197; People v. Daniel's, 6 Utah 288, 292,
296; Dillon on Mun. Corp., 4 ed., 328; Linford v. Ellison,
155 U. S. 506, 508.

Irregularity of judgment cured by *nunc pro tunc*
order.      Leonard v. Broughton, 16 Am. St. Rep. 347;
Davidson v. Richardson, 126 Am. St. Rep. 738; Coe v.
Erb, 69 Am. St. Rep. 764; Ninde v. Clark, 4 Am. St.
Rep. 823; Black on Judgments, secs. 126, 132.

## OPINION OF THE COURT.

PARKER, J.—This was a proceeding by mandamus
by the treasurer of the city of Albuquerque against the
treasurer of Bernalillo County to compel the latter to pay
over to the city treasurer certain taxes claimed to be due
it as the result of collections of delinquent taxes.   The
county treasurer had refused to pay over the money and

justified his refusal upon Chapter 57 of the Laws of 1909, which is as follows:

"Section 1. That Section 2 of Chapter 65 of the Laws of 1907, be amended by substituting therefor the following: 'That all delinquent taxes for the years 1901, 1902, 1903, 1904, 1905 and 1906, be distributed as follows: Two-thirds thereof to be paid into the general county fund and one-third thereof to be paid into the general school fund of the respective counties in which they are collected: *Provided, however,* That the two-thirds of such taxes as above mentioned to be paid to the general county fund shall be used for the purpose of paying the debts of such county for the years 1901, 1902, 1903, 1904, 1905 and 1906, and shall be applied pro rata upon the debts of said county incurred during such years and duly approved by the Board of County Commissioners; and if any surplus shall remain the said surplus shall go to the current expense fund of the said county.' "

"Sec. 2. This act shall be in full force and effect from and after its passage and all acts in conflict herewith are hereby repealed."

It appears that the taxes which are the subject of controversy are taxes levied for "city purposes." In the absence of allegation or evidence to the contrary we are compelled to assume that the taxes referred to are such as were levied and collected for the ordinary governmental purposes of the city. No distinctions between the power of the legislature over revenues raised for ordinary governmental purposes and those raised for strictly local or municipal purposes need be pointed out or defined. The specific question, therefore, is: First. Can the legislature divert from a city money raised by taxation for its ordinary governmental purposes and appropriate it to the general expense or general school fund of the county in which the city is located? Second. Has it done so?

We pass the general principle, as conceded, that a municipality has no property right in revenues raised for governmental purposes. It has acted merely as an agent of the state and the revenues belong alone to the state. They are the same as if they had been raised directly by

the state and were in its treasury. Can the Territory, then, levy a tax upon the property in a city, not levied on the rest of the county, and apply it to the general running expenses of the county in which the city is situated? In other words, can the legislature levy a tax upon a portion of the people within a given district and devote it to governmental purposes for the whole of the district?

In territories the only restrictions upon the taxing power are those contained in the constitution of the United States and congressional enactments. Talbot v. Silver Bow Co., 139 U. S. 438.

Counsel urges that the provision of the so-called Springer Act, 24 U. S. Stat. 170, 7 Fed. Stat. annotated, page 264, forbidding local or special laws for the assessment and collection of taxes has been violated. But this is not a local or special law. It applies to all cities in the Territory alike. It is the fourteenth amendment to the Constitution of the United States to which resort must be had to test the validity of this act and no other limitation upon the legislative power in this regard, of which we are aware, exists. The amendment, of course, provides, among other things, that no person shall be deprived of the equal protection of the laws. This provision was not designed to secure absolute uniformity and equality of taxation and thus supersede state constitutions and laws designed for that purpose. Bell's Gap R. Co. v. Pennsylvania, 134 U. S. 232, 237. It permits reasonable and just classification of taxpayers and, so long as all within the class are treated alike, its provisions are not violated. Ty. v. D. & R. G. Co., 12 N. M. 425; Giozza v. Tiernan, 148 U. S. 657, 662.

At this point appears the real defect in the law, if it is to be literally construed. A portion of the people pay a tax for the support of the county government which is not levied upon the remainder of the people of the county. This is a clear violation of the constitution and is not permissible. By reason of this act the inhabitants of all cities, at least those delinquent as tax payers, are selected as those upon whom the burden of taxation for county government is doubly laid. If any reason could be assigned for so unequally taxing residents of cities, a different question

might arise. If by reason of residence within a city the tax payer received greater benefits from the county government than the tax payer in the county but without the city, some basis might be afforded to justify the discrimination. But it is apparent that no such difference can exist. See Santa Clara Co. v. So. Pac. R. Co., 18 Fed. 385; The Railroad Tax Cases, 13 Fed. 722; R. R. & Tel. Co's. v. Board of Equalization, 85 Fed. 312, 317; Ry. v. Taylor, 86 Fed. 168, 186; Railway v. Ellis, 165 U. S. 150; Railway v. Mathews, 165 U. S. 1; Fraser v. McConway & Torley Co., 82 Fed. 257; So. Railroad Co. v. Greene, 216 U. S. 400; Home Ins. Co. v. New York, 134 U. S. 594, 606; Barbier v. Connolly, 113 U. S. 27, 31; Bank v. Boston, 125 U. S. 68.

The only real difficulty in this case arises out of the fact that the mandamus was brought by the city, a mere agency of the Territory, and which had been divested of its right to the use of the funds by the act. Want of interest in the city at once suggests itself. The vice in the law consists not in taking the money from the city, for the Territory might expend it for the benefit of the city in its own way and according to its own wisdom. The vice consists in appropriating the money to other than city purposes thus effectuating discriminatory taxation. The difficulty, however, seems to be readily solved by a rule of construction which seems, under all the circumstances, applicable to the words used in the statute.

The position of appellant is that the terms of the act are comprehensive and therefore include all delinquent taxes of every kind and character whatsoever. Looking alone to the letter of the law his position is certainly correct. Appellee contends that the words, "all delinquent taxes", used in the act are used in a restricted sense and do not include city taxes. The argument is based upon the unreasonableness, hardship and injustice of a literal interpretation of the statute as well as the unconstitutionality of the act if construed literally. This argument is certainly very forceful and, we think, sound. To adopt the literal interpretation is fraught with serious consequences. In the first place the city tax payer pays his

ordinary county tax the same as other residents of the
county and receives his proportionate share of the benefit
derived from county government. In addition 'he pays
his city tax, which, if the fund is to be diverted, bears no
part' of the city's burdens and for which he receives no
benefit. The city also suffers. It is to be presumed that
the city levies its taxes in view of its needs and necessarily
in view of its prospective collection of revenue. If the
fund is to be diverted much embarrassment may result
to the city in meeting its current expenses, in maintain-
ing its public schools, its internal improvements and meet-
ing many of its various obligations. It may be urged that
as the taxes proposed to' be diverted are for years not
later than 1906, antedating by three years the proposed
diversion, no harm could result to the city or its institu-
tions. But as before seen the levy of its taxes may well
have been regulated by its prospective income from the
very taxes sought to be diverted to the county by this act.
Just why taxes in such large amounts were allowed to
remain delinquent so long does not appear except by a
reference in the briefs to the effect' that they had been in
litigation and were due from a few large tax payers and
were paid after the litigation. It therefore appears that a
literal interpretation results in injustice, hardship and
unreasonableness, and, when properly questioned, the act
so construed must be held to be beyond legislative power.
Conceding, without deciding, that it is within the power of
the legislature to effectuate these results as against the
appellee in this case, it being a mere agency of the state,
and admitting that ordinarily neither the citizen nor the
municipality has any property right in a tax levied or paid,
and that the Territory may appropriate the money raised by
taxation to such use as it may see fit, still in view of all
the circumstances in this case we are constrained to hold
that it has not done so. In reaching this conclusion we
are not unmindful of certain cardinal rules of interpreta-
tion. The first is, of course, that the intention of the
legislature, when ascertained, must control; that the intent
of the legislature is ordinarily to be ascertained solely
from the language used; that no question of propriety of

the legislation is to control the plain terms of the statutes. Bu there are other rules of construction which we deem in this case to be controlling. Thus in Holy Trinity Church v. United States, 143 U. S. 457, an action was commenced to recover the penalty prescribed by the act of Congress for importing foreigners into the United States under contract, made previous to the importation, to perform labor or services in the United States. The corporation of the Trinity Church of New York had contracted with an Englishman to remove to the City of New York and enter into its service as rector and pastor of the church. In that case the court said:

"It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers. This has been often asserted, and the reports are full of cases illustrating its application. This is not the substitution of the will of the judge for that of the legislator, for frequently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of the whole legislation, or of the circumstances surrounding its enactment, or of the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the legislature intended to include the particular act."

In U. S. v. Kirby, 7 Wall. 482, 486, it is said:

"All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed, that the legislature intended exceptions to its language which would avoid results of this character. The reason of the law in such cases should prevail over its letter."

Also in Davis v. Bohle, 92 Fed. 325, 328, it is said:

"It is one of the fundamental rules of the construction of statutes that they should receive a sensible interpretation and that a construction should always be avoided which in its practical operation tends to defeat any of the purposes of the statute or which leads to an absurd conse-

quence. Exceptions may be presumed, or words omitted or supplied, when it is necessary to accomplish the obvious intent of the law maker and to prevent injustice or oppression."

In Riggs v. Palcer, 5 L. R. A. 340, 345, it is said:

"It is a familiar canon of construction that a thing that is within the intention of the makers of the statute is as much within the statute as if it were within the letter; and a thing which is within the letter of the statute is not within the statute unless it be within the intention of the maker."

See also Bird v. U. S., 187 U. S. 124; Hawaii v. Maukichi, 190 U. S. 212, where it is held that there is a presumption against a construction which would render a statute ineffective or inefficient or which would cause grave public injury or even inconvenience. In Hooper v. California, 155 U. S. 648, 657, it is said:

"The elementary rule is that every reasonable construction must be resorted to in order to save a statute from unconstitutionality."

In Knights Templar's Indemnity Co. v. Jarman, 187 U. S. 197, 205, it is said:

"Were the act of 1887 more ambiguous than it is as to its application to past transactions, we would still be disposed to apply the cardinal rule of construction, that where the language of an act would bear two interpretations equally obvious that the one which is clearly in accordance with the provisions of the constitution is to be preferred."

See also Lewis Suth. Stat. Con., secs. 347, 489, 376, 392, 367 and 374. See also 1 Words and Phrases, page 312, where the word "all" has been many times restrained so as not to include every kind and class coming within the subject with which the word is associated.

We conclude, therefore, that, taking into account the injustice, hardship, unreasonableness, absurdity and unconstitutionality of the act if literally interpreted, that

Ry. & Power Co. et al. v. Trust Co..

we are compelled to restrict the word "all' as used in the act so as to exclude therefrom taxes levied for city purposes, and to hold that the legislature used the word in this restricted sense.

We have examined all the cases cited by appellant and do not find any of them inconsistent with the conclusion reached.

Counsel for appellant complains that the judgment was entered without notice after the cause had been taken under advisement by the court, but he was afterwards allowed to open the judgment for the purpose of making such objections as he saw fit to make as to form and substance and therefore was in no way injured. We find no error in the judgment of the court below and for the reason stated, it will be affirmed, and it is so ordered.