152 P.2d 157

**REESE v. DEMPSEY et al.**

No. 4863.

Supreme Court of New Mexico.

Aug. 10, 1944.

Mechem & Hannett, of Albuquerque, and Seth & Montgomery, of Santa Fe, for informant.

C. C. McCulloh, Atty. Gen., and Fred E. Wilson, of Albuquerque, for respondents.

MABRY, Justice.

Informant, George L. Reese, Jr., a candidate in the 1944 Democratic primary for nomination to the office of Justice of the Supreme Court, has brought this suit against the State Canvassing Board, composed of the Governor, Chief Justice of the Supreme Court, and the Secretary of State, seeking a writ of mandamus requiring said Board to perform what informant alleges to be certain additional duties of said Board in connection with canvassing the returns from said primary election and certifying the results thereof. An alternative writ was issued and this comes on upon application to make said alternative writ permanent.

The case centers about a dispute arising between informant and the State Canvassing Board during the progress of the canvass of the returns" of said primary election as to the applicability of 1941 Comp.Laws, Sec. 56-349 (6). This section, so far as material to the particular point here under consideration, provides: "Whenever it appears * * * in any state canvass, by a comparison of the certified index of registered electors, as filed in the Office of the secretary of state, with the poll books from any precinct or election division, that ballots have been cast

by persons who are not registered and have been included by the precinct election officials in their returns, it shall be the duty of the canvassing board, state or county, as the case may be, before declaring the results of the election (provided said unregistered voters are sufficient in number to change the results), to refer the matter to the district court of the county in which the precinct where such unregistered votes were cast is located, and the district court in the presence of the chairmen of the two (2) dominant political parties, and such counsel as they may employ, shall forthwith proceed to hear and determine whether such votes were in fact registered or not."

This section of the statute was enacted as Sec. 44, Chap. 147 of the Laws of 1935 immediately following the decision of this court in the case of Chavez v. Hockenhull, 39 N.M. 79, 39 P.2d 1027. In the Chavez case the court held that the "returns" of an election did not include copies of registration lists and poll books in the office of the Secretary of State. Under the act of 1935 such returns are now made to include the poll books and copies of the registration lists, or "certified index of registered electors, as filed in the Office of the secretary of state."

Respondent urges that this section does not apply however to primary elections, contending that it was never meant to so apply, and if it were so intended, the language of such section is so involved and uncertain, and so inapplicable to primary elections, that it must be held inoperative and invalid as to such elections.

Respondents in their answer make and rely upon three points, viz., (1) 1941 Comp. Sec. 56-349 (6) is not applicable to the facts in this case in a primary election, and is entirely unworkable in any election as a judicial proceeding. (2) If applicable in a primary election, 1941 Comp. Sec. 56-349 (6) is limited in scope to wholly unregistered voters without concern with party affiliation, and is not mandatory. (3) It is not the duty of the State Canvassing Board of its own motion to compare poll books in the office of the Secretary of State with certified registration lists, if any, required by law to be filed in said office for use in primary elections for the purpose of discovering whether votes were cast by unregistered voters in such number as might affect any results to be canvassed by said Board.

It is contended by informant that Chap. 147 of the Laws of 1935 was a direct outgrowth of the Chavez case, supra, and recites legislative history to show that it was the purpose of both political parties represented in the 1935 legislature and of the committee of the legislature which, sensing the somewhat narrow limits, under the decision in Chavez v. Hockenhull, supra, within which the canvassing boards could operate in detecting and protecting against the not too difficult practice of this particular character of fraud—voting of unregistered voters—undertook forthwith to formulate this statute, to enlarge the scope

of "returns" which were to be considered by both county and state canvassing boards. And, that the certified index of registered electors having by the 1935 act been made a part of the returns, that such index must be considered, and the procedural statute heretofore mentioned followed, by it as a canvassing board where it appears, as here alleged, that ballots have been cast by persons who are not registered as Democrats. There being no provision in the law for primary elections in 1935, the act was not made applicable to primary elections until thereafter and by the act of 1938, 1941 Comp. § 56-801 et seq., as amended by Chap. 152, Sec. 44 of the act of 1939 (1941 Comp. Sec. 56-349), when party primary elections came to supersede the convention system of nominating.

Informant pointed out before the State Canvassing Board, and now charges in his petition, that enough of such unregistered electors (meaning voters not shown to be Democrats) illegally voted in said Democratic primary, and for his opponent, Eugene D. Lujan, to change the result of the election if such unregistered votes be purged and deducted from the majority claimed by and otherwise shown to be the majority of, informant's opponent.

It appears that as to most of the counties. in which such challenged votes arise that the lists, or "certified index of registered electors", have in fact now been furnished by the respective county clerks to the Secretary of State's office, and that these were before the Canvassing Board at the time the canvass was in progress and when halted by the alternative writ heretofore directed to it.

It is suggested in the brief of informant that, in any event, there are now before the Canvassing Board enough of the completed and accurately certified indexes of such registered electors wherein the party affiliation is shown to give informant a clear majority of the votes cast in said primary if the votes of those not registered as Democrats are deducted from the majority which would otherwise, upon the face of the county and precinct certificates, show informant's opponent to have been nominated. But he shows that the Canvassing Board now refuses to examine for such comparison with the poll books even these completed certified indexes of the registered electors already in the hands of the Secretary of State and available to it. The refusal is based upon the theory that in no event does such duty devolve upon the Board canvassing primary election returns. That is to say, the respondents maintain that even though the lists of registrants now before them which do carry the information as to party affiliation these cannot be considered by them as parts of the returns to be canvassed if, in fact, the statute in question (Sec. 56-349 (6) applies, if at all, only to general, and not to primary, elections.

It might be noticed at this point that subsection 6 of Chapter 147, only a portion of which is hereinbefore set out, provides, as to the *county* canvass, that "the

original affidavits of registration, constituting the official registration list and record in the office of the county clerk, * * * may, in any county canvass, be considered a part of the official election returns." Informant Reese emphasizes, in urging the point that party affiliation must be shown to make the "index" complete, his contention that there can be no reason why the County Canvassing Board should be better implemented (as they would be if respondents' position be sustained) to make the comparison of non-Democratic registrants with ·the Democratic voters as shown by the poll books, than should be the state board; that, while the county board, using the original affidavits of registration, which do carry the party designation, along with other information, has access to the information needed to correctly canvass the returns of a primary election as to county candidates, the state board does not have this essential information unless the "certified indexes" of such electors to be furnished the Secretary of State likewise show party affiliation.

If Section 56-349 (6) is applicable at all to primary elections, a question to be hereinafter resolved, it seems inescapable that the legislature would not have intended to afford county canvassing boards information and records not available to the State Canvassing Board, when both the county and state boards are required to perform identical duties in respect to the candidacies over which their respective jurisdiction extends. That is to say, the county boards will know by referring to the original affidavit of registration—the permanent record, or registration sheet—the party affiliation, if any, declared by every registrant. Nothing less than the party affiliation, so declared upon the original certificate, and upon which rests the right to vote in any primary election (Sec. 56-245), could be of any possible aid to a canvassing board of a primary election.

Respondents would give to the term "certified index of registered electors" a rather restricted meaning. Informant, on the other hand, would give it what would be called, perhaps, an enlarged meaning in its attempt to rationalize the legislative intent and to make the statute workable, and that would be in line with conventional rules of statutory construction. In the construction of a statute, in order to determine the true intention of the legislature, the particular clauses and phrases should not be studied as detached and isolated expressions, but the whole and every part of the statute must be considered in fixing the meaning of any of its parts. State v. York, 24 N.M. 643, 175 P. 796. All parts of an act relating to the same subject should be considered together, and not each by itself. Sakariason v. Mechem, 20 N.M. 307, 149 P. 352. All legislation is to be construed in connection with the general body of the law. Dorman v. Sargent, 20 N.M. 413, 150 P. 1021. While the intent and purpose of the legislature may not be so clearly and aptly expressed as might be, nevertheless we find no dif-

ficulty in arriving at such intent. And the intention of the legislature, in passing a statute, is the primary and controlling consideration in determining its proper construction. When a power is conferred by statute, everything necessary to carry out the power and make it effectual and complete will be implied. State v. Hall, 23 N.M. 422, 168 P. 715. Statutes, though imperfect in form, should be upheld and sustained by the courts, if they could be so construed as to give sensible effect and to render them of binding force. State v. Southern Pac. Co., 34 N.M. 306, 281 P. 29.

Under a liberal construction of the word "index" as here used implies more than just the name and address of the registrant, although the statute says it *shall* contain that much (Sec. 27, Chap. 152, Laws of 1939, as amended, 1941 Comp. § 56-228), obviously sufficient for the purposes of canvassing the results of a general election. Under many circumstances, we know indexes furnish much information. It depends upon whether the index is to be a general, or a specific and detailed one. We say that here it must at least be sufficiently detailed to serve the purpose for which it is provided. Otherwise the requirement that there be an index at all, so far as aiding in a canvass of the returns of primary elections is concerned, would be a futility. "Webster defines 'Index' to be—that which points out—-that which indicates or manifests * * *." Metz v. State Bank of Brownville, 7 Neb. 165, 172.

"There is a group of words, each of which has its distinct meaning, but finds its respective place under the general heading of index; these are calendar, catalogue, *digest,* inventory, register, *summary, syllabus* and table". (Emphasis ours.) Encylopaedia Britannica, Vol. 14, page 373.

We do not think the requirement that such indexes, or lists, shall contain the names and addresses of such registered voters (Sec. 27, Ch. 152, Laws of 1939, as amended) necessarily excludes other information vital to the performance of the Canvassing Board's duties.

Our conclusion that the word "index" was intended to embrace the essential information which the county canvassing boards have in making a county canvass is fortified by the fact that an examination of Sec. 1 of Ch. 147, L. 1935, which provided that in a county canvass the "original" registration book may be used, and that in a state canvass the "duplicate original" registration book may be used. Here the two boards are on an equal basis of information and efficiency.

The 1939 legislature (Ch. 152, supra) amended the registration laws so as to provide for a statement of party affiliation. If the foregoing 1935 statute were not superseded there would be available to the State Canvassing Board a *duplicate original* of registration records contained in the county clerk's office, including party affiliation, and no troublesome question would therefore arise.

There is no apparent reason for supposing that the 1939 legislature in devising a substitute for the duplicate original registration records intended that the State Canvassing Board, in canvassing the returns of a primary election to select party candidates for state offices, should have less information than the county canvassing board. So it must be assumed that in the interest of economy and convenience the legislature had in mind, in offering the substitute for the duplicate original registration records, to put something in its place that would reasonably serve the purpose of that which was superseded. The "certified index" would be a complete failure as a substitute for the duplicate original in the canvass of a primary election unless the index contained the party affiliation of the registrants. Under such circumstances we may look to "prior legislative enactments on the same subject, though repealed, * * * to determine the probable legislative intent in a doubtful statute of a later date." Territory v. Luna, 3 N. M. 218, 223, 3 P. 241, 243. Generally, see also State v. Llewellyn et al., 23 N.M. 43, 167 P. 414; Territory ex rel. v. Pinney, 15 N.M. 625, 114 P. 367; Seidler v. Lafave, 5 N.M. 44, 52, 20 P. 789; and State ex rel. Dresdon v. District Court, etc., 45 N.M. 119, 112 P.2d 506; Sutherland Statutory Construction (3rd Ed.) 540, Sec. 5203; Hyland v. Rochelle, 179 Ind. 671, 100 N.E. 842. Whether we restrict or enlarge the term "index", we cannot escape the clear legislative injunction that "no person whose party affiliation is not shown on said affidavit of registration as herein provided shall be permitted to vote at any primary election and no person at any primary election shall be permitted to receive a ballot of any party other than that so designated on his affidavit of registration as herein provided." Sec. 38, Ch. 152, Laws of 1939. (1941 Comp. Sec. 56-245). Sec. 3 of Ch. 153 of the Laws of 1939 expressly prohibits the *counting* or *canvassing* of any ballot of a voter *not registered as provided by law.*

So when we come to determining the limits within which the term "index" as here used will operate, we do not hesitate to ascribe to the legislature in employing the word "index" in this connection an intention to give the Canvassing Board at least enough information to make the index and lists of registrants serviceable. We hold, under circumstances here present and so as to effectuate the clear purpose of the legislature, that the index contemplated under the provision of this statute means not only the name of the voter but his party affiliation, if any.

We are asked to say what is a "registered voter", or "registrant", under the election laws now under consideration. Section 3, Chapter 153 of Laws of 1939 (1941 Comp. Sec. 56-246), provides: "No person shall vote at any general, special, primary, or municipal election unless *registered as provided by the laws* of the state of New Mexico and unless otherwise qualified as herein provided; and no ballot of any unregistered or otherwise un-

qualified elector or person, shall be cast, *counted* or *canvassed*. The provisions of this section shall be mandatory. * * *" (Emphasis ours.)

"No person whose party affiliation is not shown on said affidavit of registration as herein provided shall be permitted to vote at any primary election and no person at any primary election shall be permitted to receive a ballot of any party other than that so designated on his affidavit of reg-·istration as herein provided. The provisions of this section shall be mandatory." Laws of 1939, Chap. 152, Sec. 38. (1941 Comp. Sec. 56-245.)

 It is not difficult, then, to see how one not registered as a Democrat is not entitled to vote in a Democratic primary. He is not a "registrant" within the meaning of the act. And such unregistered voter (that is, one voting in a Democratic primary and not registered as a Democrat) will not have his vote "counted or canvassed". We cannot escape the plain import of the italicized language above quoted from Section 56-246. Once we say, as we do, that one who votes in a party primary when he is not registered as a member, or affiliate, of such party is not a registrant, or registered voter in such primary, a pertinent query posed by respondents is answered. We find no merit to the contention of respondents that Section 56-349 (6) is limited in scope to wholly unregistered voters, and that the requirement that the indexes or lists of registrants be considered a part of the election returns, is merely directory.

 Counsel for respondents suggest that the word "may", as employed in Section 56-349 (6), gives respondents a discretion to employ or not, as they may determine, the indexes, or lists, of the registrants as a part of the returns. We see no merit to this contention. The law enjoins upon the Board the duty of canvassing *all* of the returns of an election. "May" is not infrequently used interchangeably with "must". For example, it was held in Rich v. Board of St. Canvassers, 100 Mich. 453, 59 N.W. 181, 184, that as used in a statute providing that the Board of election canvassers "may" dispatch a messenger to the inspectors of an election, commanding them to complete the returns in the manner specified by law, the word "may" should be construed to mean "must". Nor is it necessary for a person to be a lawyer in order to know that the word "may" in such a statute imports an absolute obligation.

Moreover, by Section 56-358 following, it is required that "the state convassing board, in canvassing the results of any election *shall* consider as a part of the official returns the certified lists of registrants filed in the office of the secretary of state, * * *." (Emphasis ours.) That "may" is used in one place, and "shall" in another, does not, under the circumstances, confuse us as to the purpose and intent of the statute.

 Coming now to the question whether Section 56-349 (6) applies to primary elections, we hold that it does.

1941 Comp. Sec. 56-813, provides:

"Such primary election shall be held, the voters shall vote therein, the method of voting shall be followed, the votes counted and canvassed, and the returns made in the same manner as by law provided for general elections except as herein otherwise provided or inconsistent with the provisions of this act; and such primary elections shall in all respects conform to the laws governing general elections, except as herein otherwise provided. All provisions of law governing general elections in this state not in conflict herewith, are hereby made applicable to and shall govern primary elections. The powers and duties conferred or imposed by law upon boards and judges and clerks of elections, canvassing boards and other public officials in connection with general elections, are conferred and imposed upon all such officers of primary elections and shall be exercised by them in connection with primary elections, except as otherwise herein provided or in conflict herewith.

"The district courts of this state and the judges thereof in vacation shall have jurisdiction to enforce the provisions of this act by injunction, mandamus, prohibition or other proper remedy."

It is provided by 1941 Comp. Sec. 56-815 that: "The county and state canvassing boards shall canvass and certify the results of each party primary election and shall issue certificates of nomination to the successful candidates of each party participating in the primary, as and in the same manner required to be done at all general elections, the county canvassing board within six (6) days and the state canvassing board within fifteen (15) days after the primary; provided, however, that each of the said canvassing boards shall continue in session until each has fully completed the duties upon it imposed herein and by the General Election Code."

We find in the primary election act no other reference than as above set forth to the manner and method of canvassing and certifying returns of such election. So, there being no method "otherwise provided" and finding it not to be "inconsistent with the provisions of this act" to have counted and canvassed the results of a primary election "in the same manner as by law provided for general elections", we hold that Section 56-349 (6) of the general election code is applicable and controlling. The same duties which devolve upon the State Canvassing Board in this connection as to a general election likewise become their duties in respect to a primary election. The fact that some provisions of the general election code would not apply to primary elections does not detract from the force of the argument that other portions not inconsistent, including Section 56-349 (6), do apply.

Respondents argue that the district court, to whom the Board would, under Section 56-349(6), refer the ballots of challenged voters to determine how unregistered voters voted, in order that there may be made deductions from, or additions

to, the candidates' majorities as the circumstances require, would be acting in a judicial capacity and yet without definite legal notice to interested parties and without adequate machinery to do the work required of it. But it is to be noticed that this is not a contest proceeding, or a controversy between the party candidates as such. It is a canvass of election returns; and no one is foreclosed of any other statutory remedy that might be available, such as a recount, or contest. Only a prima facie right to the office is afforded by the certificate of election. The statute might here have provided better and more convenient machinery, or it might have limited the powers of the Board to strictly ministerial duties without right to inquire into the question of unregistered voters at all, as it is not empowered to inquire into fraudulent practices generally. But the legislature has given them exceedingly broad powers and duties and they must be exercised however onerous they may seem to be, or regardless of the time required for the performance. The courts may not question the wisdom of legislation, if it be constitutionally authorized. The general rule probably is that under most statutes boards of canvassers are confined to rather narrow limits in the performance of their usually purely ministerial acts. 9 R. C.L. 1110, Sec. 114; 29 C.J.S., Elections, 340, § 237. But we must look to our own statute in resolving this question. It must have been thought that a district judge was as well, if not better, circumstanced to determine the fact of whether a non-registrant had voted in a primary election, than a board or other agency. The district judge in such case is employed as an aid to the Canvassing Board merely.

The right to hold office, after all, is not a property right; and there is no such thing as an absolute right to hold office (State v. Sargent, 145 Iowa 298, 124 N.W. 339, 27 L.R.A.,N.S., 719, 139 Am.St. Rep. 439); and there is no vested interest therein, although the privileges of one holding office are, within certain limitations, entitled to the protection of the law. State v. Common Council of City of Duluth, 53 Minn. 238, 55 N.W. 118, 39 Am. St.Rep. 595; 22 R.C.L. 376, 378, Secs. 8 and 9. The legislature may provide any reasonable method of testing one's claim to election to office, and the fact that such method does not afford all the safeguards accorded litigants generally in judicial proceedings involving their property rights would not be fatal.

If a canvassing board, a ministerial body, might properly issue a certificate of election upon its own canvass, or that of precinct election officials (who themselves had the right in the first instance to deny the privilege of voting to persons which such precinct election officials thought to be unregistered), how can it be said that respondents are without authority to canvass and deduct such unregistered votes simply because they may have been aided at arriving at the ultimate fact of the right to vote by the findings of a judicial officer? What if the legislature had vested

the right to determine the fact of registration, and therefore of the right to vote, in the State Canvassing Board directly? Certainly it could have done so, although this is not the common practice, since there is no constitutional mandate or rule of law which would confine the entire or any part of the process of canvassing election returns—of determining which candidate received the highest number of legal votes—to a judicial tribunal. "Elections belong to the political branch of the government, and are beyond the control of the judicial power." 29 C.J.S., Elections, 355, § 246.

"The certificate of election does not evidence any adjudication." State v. District Court, etc., 107 Mont. 370, 86 P.2d 5, 8.

"The computation of the result of the votes as disclosed by a recount has no more effect upon the final and ultimate right to an office than does the computation originally made by the precinct judges and clerks of election, and by the official canvass thereafter made by the canvassing board. It is true that the judges of election are required to use some discretion and must decide some questions in the course of counting votes. While the duty is ministerial, generally speaking, the judges of election are required to observe the election laws and to that end have excerpts therefrom in their possession. These slight deviations from pure ministerial duties do not render the position judicial in the proper or general sense. Neither do the same discretionary powers, when exercised by the canvassing board, alter the fact that the canvassing board is a ministerial body." Ibid.

Having, as heretofore concluded and decided, it remains to be considered whether our alternative writ is too broad in that it requires respondents to "Procure from the respective county clerks of the counties of San Miguel, Torrance, Valencia, Mora, and Bernalillo, an alphabetical index or list of all registered electors of each precinct or election district in their respective said counties, showing the party affiliation, or lack of party affiliation, of such electors, the names and addresses thereof in alphabetical order, and duly certified by said respective county clerks as true and correct, according to the original registration affidavits on file in their respective offices, as amended or corrected on May 8th, 1944."

■■■ We do not think the writ too broad in this respect. We do not, however, think it appropriate to at present direct the respondents how these missing returns may be procured. Respondents make no specific claim in their response to the alternative writ or in their brief that it will be impossible to procure the certified lists, or indexes, from the counties mentioned in the writ. It appears that those from Bernalillo county were filed after the issuance of the alternative writ and prior to the filing of the response thereto. Lists of voters without a showing of party affiliations have been furnished by the county clerks of Mora and Valencia counties, and it is asserted by counsel for relator that the

same may be said of lists from some other counties listed in the response, but which are not mentioned in the alternative writ. It is also asserted that it is only from San Miguel and Torrance counties that no lists of any sort have been filed and that the county clerk of San Miguel county has expressed a willingness to furnish any list required.

We apprehend that the failure or refusal of any county clerk to perform these duties has arisen from a good faith misunderstanding of the law, and not through any spirit of capriciousness or desire to bring to naught the continuing functions of the State Canvassing Board charged with the important duty of canvassing the returns and declaring the result of the primary election. And, we assume that all such county clerks will furnish the required certified indexes, or lists, when advised by the Attorney General, or otherwise, of the decision of this court that such lists are required of them by law. The suggestion is made that some county clerks might urge lack of clerical aid or some other excuse for not promptly performing this duty. We will suppose that such excuses will not be offered, and if offered, would, of course, afford no defense. A duty is imposed upon every public official, so long as he holds office, "to perform the duties prescribed by law." Fancher v. Board of Com'rs, 28 N.M. 179, 190, 210 P. 237, 241; Miera v. Field, 24 N. M. 168, 172 P. 1136.

We venture to suggest, however, that the State Canvassing Board could appropriately institute mandamus proceedings to aid in the procurement of the missing returns, if necessary.

In 35 Am.Jur. "Mandamus", there is a subdivision considering practice and procedure, and showing who are entitled to sue. It is there said (Sec. 322): "Public Boards or Officers as Relators—Generally, when a power or duty is imposed by law upon a public board or officer, and in order to execute such power or perform such duty, it becomes necessary to obtain a writ of mandamus, it or he may apply for the same."

19 Standard Encyclopaedia of Procedure on "Mandamus", page 247, puts it this way: "State, * * * boards or officers are proper relators where the proceeding is to enforce acts or duties over which they have supervision or which are necessary to the performance of their own functions."

In 113 A.L.R. 589, there is an annotation to the subject: "Public officer or board as proper relator in mandamus proceeding to enforce duty owed primarily to individual or to other political unit or public authority."

At page 597 is a paragraph as follows: "a. Where act is a prerequisite to the performance of relator's duty.—The cases in general recognize the principle that a public officer, notwithstanding the direct interest of some other public officer, or an individual, may act as relator in a mandamus proceeding to compel the performance of an official act necessary to be performed

before the relator can perform his own duty."

In the case to which the annotation is appended, State ex rel. Norris v. Chancey, 1937, 129 Fla. 194, 176 So. 78, 81, 113 A.L. R. 576, 577, the court decided (Syl.): "3. Public officers or boards may maintain proceedings in mandamus to compel other officers to perform ministerial acts which come within the scope of their supervision or which are necessary to be performed in order to enable such officer or board of officers to perform its own duty."

The court, after reviewing the authorities, said: "It thus appears that this court has recognized the soundness of the principle that public officers or boards of officers may maintain proceedings in mandamus to compel other officers to perform ministerial acts which come within the scope of their supervision or which are necessary to be performed in order to enable such officer or board of officers to perform its own duty. This principle appears to be generally recognized in other jurisdictions. See 38 C.J. 836."

The Supreme Court of Oregon in State ex rel. Withycombe v. Stannard, 84 Or. 450, 165 P. 566, 568, L.R.A.1917F, 215, decided that the Governor may maintain an action to compel county officials to take the necessary steps to hold an election which will affect the whole state, and that mandamus will lie to compel county officials who have declared their intention not to comply with the requirements of the law necessary to the holding of an election to take the steps

necessary for that purpose, although the time has not yet arrived for the performance of any act. The court, after reviewing the authorities, concluded: "The courts will not chop technicalities when their aid is asked to compel the performance by a public officer of a duty which he owes to the citizenry of the whole state, but, where no other remedy presents itself, will exercise their constitutional authority to compel by mandamus the performance of such duty."

So here, being mindful of the admonition to be found in the Constitution (Art. 7, Sec. 1) that the legislature shall enact such laws as will secure the secrecy of the ballot, the purity of elections and guard against abuse of elective franchise, and the Constitution having selected high state officers, the Chief Justice, Governor and Secretary of State to canvass and declare the result of elections for state officers (Sec. 2, Art. 5), and the legislature having made an elaborate effort to comply with the constitutional mandate above referred to, we are not inclined to "chop technicalities" to the end that the broad purposes and legislative policy manifested by the acts, as here construed, may be defeated; or that the powers and duties of the State Canvassing Board may, by strained definition, be cramped into such narrow compass that it cannot function in the public interest.

It might also be suggested that it has been frequently decided that where the public interests are involved, the Attorney

General may institute a petition for mandamus to vindicate the public right. Attorney General v. Secretary of the Commonwealth, 1940, 306 Mass. 25, 27 N.E.2d 265.

For the reasons given the writ of mandamus will be made absolute. We retain jurisdiction of the cause for the purpose of considering any applications which may be made by the relator to amend his application for further relief by way of bringing in new parties respondent in the event the efforts of the present respondents shall prove ineffectual to procure the missing returns. And it is so ordered.

BICKLEY and BRICE, JJ., concur.

BARKER and KOOL, District Judges (dissenting).

It is elementary that for mandamus to lie there must be a clear legal right on one side coupled with a clear legal duty on the other. Mandamus lies to enforce the performance of an existing duty and not to create a new one, citing Ex parte Rowland, 104 U.S. 604, 26 L.Ed. 861.

The legislature in enacting the primary law attempted to make it whole by assimilating the general election law by reference. The result is a confusion of language relating to canvassing a primary election, that to say the least does not create a clear legal right on one side or a clear legal obligation on the other.

In 1935 prior to the enactment of the primary law, the legislature provided that the canvassing board could consider the duplicate original registration certificate on file with the Secretary of State in determining whether a sufficient number of unregistered votes had been cast to change the results of an election and if so the board should certify the matter to the District Courts. In 1939 subsequent to the enactment of the primary law this was changed and it was provided that the board could consider the "certified index of registered electors". 56-349, Subsec. 6, N. M. Statutes Annotated 1941 Compilation. At the same time and as part of the same chapter it was provided that the index shall include an alphabetical list of the names and addresses of the registered voters. In this section providing what the index to be prepared by the county clerk should contain, there was no mention of the fact that it should contain the party affiliation of the voter. In 1941 the legislature again reiterated that the index prepared by the county clerk should include an alphabetical list of the names and addresses of the registered voters.

It is conceded that without this list containing the party affiliation the canvassing board is powerless to perform the acts which this suit asks it be ordered to perform. The majority of the Court has stated that the legislature must have intended the party affiliation be a part of this index even though the legislature had two different opportunities to say so and did not. The language of the statute is clear and explicit; if the legislature by over-sight or neglect failed to put in sufficient provi-

sions to make it workable then it is not the province of this Court to provide that which it believes the legislature forgot and thereby assume the duties of the legislative branch of the Government.

While there is New Mexico authority for the majority opinion, we believe it is a dangerous practice to take the clear and unambiguous language of the legislature and add thereto or subtract therefrom to accomplish that which the Court believes the legislature intended. This not only leads to confusion in the District Courts and to the lawyers in attempting to advise their clients, but could easily result in the creating of legislation by the Court entirely contrary to the intent of the legislature. It is certain that the legislature intended that election officials at a primary election should refuse a Democratic ballot to a registered Republican and visa-versa. And, it is certainly highly probable that the legislature did not intend that the Governor, the Chief Justice of the Supreme Court and the Secretary of State should scrutinize and duplicate the work of election officials in this respect.

While the informant has requested only five counties be canvassed for unregistered voters, it is not to be presumed that the state board would be precluded from canvassing any other counties where it is indicated by the returns that unqualified voters have voted in the Democratic primary, but on the contrary it would be their duty to make such additional canvass.