2006-NMSC-034

140 P.3d 498

David COBB and Michael Badnarik,
Petitioners–Appellants,

v.

STATE CANVASSING BOARD of the
State of New Mexico, Rebecca Vigil–
Giron, in her capacity as Secretary of
State, Bill Richardson, in his capacity as
Governor, Petra Jimenez Maes, in her
capacity as Chief Justice, Respondents–
Appellees.

No. 29,095.

Supreme Court of New Mexico.

May 16, 2006.

Freedman Boyd Daniels, Hollander & Goldberg, P.A., John W. Boyd, Theresa M. Duncan, Albuquerque, NM, Garcia & Vargas, L.L.P., David P. Garcia, Santa Fe, NM, Law Offices of Lowell Finley, Lowell Finley Berkeley, CA, for Petitioners.

Patricia A. Madrid, Attorney General, David K. Thomson, Assistant Attorney General, Zachary Shandler, Assistant Attorney General, Santa Fe, NM, for Respondents.

**OPINION**

SERNA, Justice.

{1} Petitioners, two candidates in the 2004 presidential election, applied to the State Canvassing Board for a recount and recheck of certain ballots and deposited $114,400 for both procedures as required by NMSA 1978, Section 1–14–15(A), (B) (2001) (amended 2005). The State Canvassing Board conditioned beginning the recount and recheck procedures on Petitioners first depositing $1.4 million, the entire estimated cost, in advance. A lawsuit ensued challenging whether the State Canvassing Board had such authority. While this case was on appeal, the Legislature amended Section 1–14–15(B) to authorize the State Canvassing Board to condition any recount on a deposit of the full estimated costs of the recount or any portion thereof.

{2} The State Canvassing Board argues that the 2005 amendment to Section 1–14–15 makes this case moot for two reasons. First, because the Legislature amended Section 1–14–15(B), this case is incapable of repetition. Second, two years after the election a recount under NMSA 1978, Section 1–14–14 (1977) would have no effect on the winner of the 2004 presidential election. Petitioners contend that the Section 1–14–15(B) amendment is an unconstitutional delegation of legislative power, and as a result the 2001 version of Section 1–14–15(B) is still effective. Furthermore, Petitioners concede that a recount would not have an effect on who is President, but urge this Court to reach the merits of their claim because it is an issue of substantial public interest and the State Canvassing Board's requirement of an advance payment of the recount and recheck costs is capable of repetition yet evading review.

{3} We agree with Petitioners that the 2005 amendment to Section 1–14–15 is an unconstitutional delegation of legislative authority; consequently, the 2001 version of the statute is still effective. Under this earlier version of the statute, we hold that the State Canvassing Board had no authority to require a deposit of the full estimated costs of the recount and recheck before starting the procedures. However, we do not remand and order a recount and recheck because a recount and recheck are no longer possible, and any change in New Mexico's 2004 presidential election results cannot change the ultimate result of the presidential election, which makes the remedy moot.

## I. FACTS AND PROCEDURAL HISTORY

{4} The 2004 presidential election was conducted on November 2, 2004. New Mexico's candidates for President were incumbent President George W. Bush, Republican party; Senator John Kerry, Democratic party; Ralph Nader, Independent; Michael Badnarik, Libertarian party; David Cobb, Green party; and Michael Peroutka, Constitutional party. David Miles, *Results Certified at Last: Bush Beat Kerry in N.M.*, Albuquerque J., Nov. 24, 2004, at A1, A2. George W. Bush won reelection, *id.*, and New Mexico's five electoral college votes, Andy Lenderman, *Electoral College Members Cast Votes*, Albuquerque J., Dec. 14, 2004, at D3. President Bush edged out Senator Kerry by a margin of 5,988 votes. Miles, *supra*, at A1. Petitioners, David Cobb and Michael Badnarik, received 3,608 votes combined, 0.48 percent of the 756,304 total votes cast. *Id.* at A2.

{5} Due to the small margin between President Bush and Senator Kerry, Petitioners filed a request for a recount and recheck on November 29, 2004, with the Secretary of State under Section 1–14–14(A), which states:

> Whenever any candidate for any office for which the state canvassing board or county canvassing board issues a certificate of nomination or election believes that any error or fraud has been committed[1] by any precinct board in counting or tallying the emergency paper ballots or absentee ballots, in the verification of the votes cast on the voting machines or in the certifying of the results of any election whereby the results of the election in the precinct have not been correctly determined, declared or certified, the candidate, within six days after completion of the canvass by the proper canvassing board, may have a recount of the emergency paper ballots or absentee ballots, or a recheck of the votes shown on the voting machines, that were cast in the precinct.

(Footnote added.). On the same day, Petitioners made a deposit of $114,400 for a recount and recheck with the Secretary of State, more than statutorily required by Section 1–14–15(A). Section 1–14–15(A) provides:

> An applicant for a recount shall deposit with the proper canvassing board or, in the case of an office for which the state canvassing board issues a certificate of nomination or election, with the secretary of state fifty dollars ($50.00) in cash, or a sufficient surety bond in an amount equal to fifty dollars ($50.00), for each precinct for which a recount is demanded. An applicant for a recheck shall deposit with the proper canvassing board or, in the case of an office for which the state canvassing board issues a certificate of nomination or election, with the secretary of state ten dollars ($10.00) in cash, or a sufficient surety bond in an amount equal to ten dollars ($10.00), for each voting machine to be rechecked.

Petitioners requested a recount of 1,500 precincts and a recheck of 3,367 voting machines, requiring a cash deposit or surety bond of $108,670 under the language of Section 1–14–15(A).

{6} Petitioners filed a petition for a writ of mandamus in the district court, *see* NMSA 1978, § 1–14–21 (1977), on December 10, 2004, to require the State Canvassing Board to issue summonses directing the precinct boards to appear and conduct the recount and recheck of all the precincts stated in Petitioners' application, *see* NMSA 1978, § 1–14–16 (1977). Each summons is forwarded to the county clerk of each county where the stated precincts are situated. Section 1–14–16(A). The county clerk (1) delivers the summons to the sheriff, who

---

1. Neither party has raised an issue concerning Petitioners' allegations of fraud or error. We conclude no issue concerning those allegations is before us. We note, however, that following the 2004 election, the Legislature has put into place a procedure for a random check of a certain percentage of the voting systems used throughout the State. *See* NMSA 1978, § 1–14–13.1 (2005) (effective January 1, 2007). The check is to be done "within five days of the completion of the county canvass." Section 14–1–13.1(A). Under certain circumstances, the secretary of state must conduct a recount for the office of president or governor "in the precincts of the legislative district in which the discrepancy occurred." Section 1–14–13.1(B). This new provision may have been intended to address the issue of fraud or error Petitioners alleged.

serves it on each precinct board member, and (2) sends notices by registered mail to the district judge of the county and the county chairperson of each political party that participated in the election in each precinct. Section 1–14–16(B). Section 1–14–16(C) commands the precinct board members, the district judge, and the county clerk to appear and conduct the recount and recheck no later than ten days after the filing of the application. On December 10, 2004, eleven days had already passed from Petitioners' original request with no action from the State Canvassing Board. At a December 13, 2004, hearing, the district court denied Petitioners' writ as premature because the State Canvassing Board was to meet and address Petitioners' request the following day, but the district court maintained jurisdiction over the case.

{7} On December 14, 2004, the State Canvassing Board issued an order granting Petitioners' application conditioned on Petitioners submitting an additional $1.4 million, far exceeding the $114,000 deposited by Petitioners. The $1.4 million reflected both the costs mentioned in Section 1–14–15(A) and the additional statutory costs associated with the recount and recheck. *See* NMSA 1978, § 1–14–15(D) (2005) ("Costs shall consist of any docket fees, mileage of the sheriff in serving summons [to members of the precinct board(s) named in the application] and fees and mileage of precinct board members, at the same rates allowed witnesses in civil actions."). The State Canvassing Board based its decision on statutory language stating "[t]he deposit or surety bond shall be *security* for the payment of the costs and expenses of the recount or recheck in case the results of the recount or recheck are not sufficient to change the results of the election." Section 1–14–15(B) (2001) (emphasis added). If the fraud or error alleged by Petitioners was not sufficient to change the result of the election, Petitioners would be responsible for the entire $1.4 million. Section 1–14–15(D). However, if the fraud or error was sufficient to change the winner, the State would pay the costs of the recount and recheck. Section 1–14–15(C). The State Canvassing Board found that "security" required the entire estimated cost of the re-

count and recheck to be paid up front to protect New Mexico taxpayers because the total cost of the recount and recheck far exceeded the amount Petitioners deposited. Additionally, in the Order Granting Application Conditioned on Additional Funds, the State Canvassing Board stated that Petitioners admitted that the error or fraud would not likely change the winner of the presidential election which meant that Petitioners would ultimately be financially responsible for the additional costs.

{8} Returning before the district court on December 15, 2004, Petitioners noted that the deposit they made was more than required under the plain language of Section 1–14–15(A) and that the State Canvassing Board had no statutory authority to condition a recount or recheck on an upfront payment of all estimated costs. Petitioners also contested the State Canvassing Board's finding in the Order Granting Application Conditioned on Additional Funds that Petitioners admitted the error or fraud would not change the winner of the presidential election. While conceding that the recount and recheck would not result in either Petitioner being declared the winner, Petitioners argued that the 5,998 vote differential between President Bush and Senator Kerry made it possible that a recount would result in Kerry being declared the winner. Petitioners asserted that nothing in Section 1–14–14(A) required that a petitioner for a recount or recheck be declared the winner of the election, and therefore, if Kerry were declared the winner, they would not be responsible for the costs of the recount or recheck. *Compare* § 1–14–14(A) (allowing *any candidate* to request a recheck or recount if the candidate believes error or fraud occurred), *with* § 1–14–15(C) (requiring the State to pay the costs associated with a recount or recheck if either procedure results *in a change of the election winner*), and § 1–14–15(D) (requiring applicants to pay the costs if the recount or recheck does not result *in a change of the election winner*). The State Canvassing Board interpreted Section 1–14–15(B) differently and claimed that Petitioners should be responsible for covering the entire estimated cost of the recount and recheck because the

recount and recheck would not result in either Petitioner winning the election. The State Canvassing Board further argued that it was authorized to condition the issuance of summonses on a deposit in the amount of the total estimated statutory costs as mentioned in Section 1–14–15(D) in order to provide sufficient "security" for the taxpayers of New Mexico.

{9} The district court affirmed the order of the State Canvassing Board requiring "security" in the amount of the entire estimated cost of the recount and recheck, noting that statutes dealing with recount and recheck "must be read as a whole and are clear that the State Canvassing Board has authority to require the entire estimated costs for Plaintiffs' application to be paid up front."

{10} On December 15, 2005, after the district court refused to issue the writ of mandamus, Petitioners, in their first appearance before this Court, petitioned for a writ of mandamus, prohibition, and/or superintending control requiring the State Canvassing Board to begin the recount and recheck procedure or, alternatively, to issue such a writ requiring the district court to issue a writ of mandamus to compel action by the State Canvassing Board. *See* § 1–14–21. This Court denied Petitioners' writ without addressing the merits of their case. Petitioners then directly appealed the district court's order to the Court of Appeals. The Court of Appeals found this Court to have proper jurisdiction pursuant to article VI, section 3 of the New Mexico Constitution ("The supreme court shall have original jurisdiction in quo warranto and mandamus against all state officers, boards and commissions ...."), and transferred Petitioners' appeal to this Court.

{11} Petitioners specifically appealed the district court's finding that the State Canvassing Board had the authority to condition a recount and recheck on advance payment of the entire estimated costs stated in Section 1–14–15(D), instead of the statutory formula found in Section 1–14–15(A). The State Canvassing Board claimed that Petitioners' appeal was now moot because New Mexico's electoral college delegates had voted, a change in New Mexico's 2004 presidential results could not change who is President,

and a recount and recheck was now impossible because the voting machines from the 2004 election had been cleared. While this case was pending before this Court, the Legislature explicitly gave the State Canvassing Board this authority by amending Section 1–14–15(B) as follows:

> The deposit or surety bond shall be security for the payment of the costs and expenses of the recount or recheck in case the results of the recount or recheck are not sufficient to change the results of the election. *The state canvassing board may condition the issuance of the summons on a receipt of a portion of or the full estimated costs of the recount or recheck to ensure sufficient security.*

2005 N.M. Laws, ch. 270, § 77 (effective July 1, 2005) (emphasis added). As a result of the amendment, this Court requested supplemental briefing on the constitutionality of the 2005 amendment to Section 1–14–15(B).

## II. OVERVIEW

{12} The two overarching issues in this case are: (1) whether Petitioners' case is properly within this Court's jurisdiction, and (2) whether the Election Code gives the State Canvassing Board the authority to condition a recount and recheck on an advance payment of the entire estimated cost.

{13} We address the issue of jurisdiction in two ways. First, we address whether our denial of Petitioners' writ of mandamus, prohibition, and/or superintending control over the State Canvassing Board, or alternatively over the district court, precludes Petitioners from appellate review of the district court's order denying Petitioners' petition pursuant to Section 1–14–21 for a writ of mandamus. We hold that Petitioners are entitled to appeal the district court's order to this Court.

{14} Second, we address whether Petitioners' case is moot. This Court must decide whether a recount and recheck would be appropriate because a recount and recheck of New Mexico's 2004 presidential election is now impossible, and any change in New Mexico's 2004 presidential election results would have no effect on who is President. We reach the merits of Petitioners'

appeal on well-recognized exceptions to mootness. This Court may review moot cases that present issues of (1) substantial public interest or (2) which are capable of repetition yet evading review. Under the first exception, while recognizing that conducting a recount and recheck is moot at this point, the Court notes that clarifying the provisions of the Election Code is an issue of substantial public interest. This case also satisfies the second exception: whether this case is capable of repetition yet evading review because of the short time frame associated with elections generally, and because the 2001 version of Section 1–14–15(B) is still effective, as we explain in Sections IV(B) and (C)(1).

{15} We next address the State Canvassing Board's authority under the Election Code in two steps. The first step, the 2005 amendment to Section 1–14–15(B), while not essential to Petitioners' claim under the original version of the statute, also addresses whether this case is capable of repetition yet evading review. We note that the Legislature attempted, through the 2005 amendment of Section 1–14–15(B), to grant the State Canvassing Board the discretion to condition a recount and recheck on a payment of the entire estimated cost of such procedures. That the State Canvassing Board had such discretionary authority was unclear under the previous version of Section 1–14–15(B), and this amendment appears to clarify the Legislature's intent. However, the amendment provides no guidance to the State Canvassing Board and grants it unfettered discretion in requiring payment beyond the statutorily required amount in Section 1–14–15(A), and in deciding the amount of advance payment that will be required for each application.

{16} We hold that the Legislature's amendment does not make this case moot because the 2005 amendment, on its face, is an unconstitutional delegation of legislative power. Therefore, we strike the amendment. Consequently, the 2001 version of Section 1–14–15(B) is still in effect, and the State Canvassing Board's action, requiring payment of the entire estimated cost of the recount and recheck, is capable of repetition while evading review.

{17} The second step addresses the State Canvassing Board's requirement that Petitioners first pay the entire estimated costs of the recount and recheck in advance under the original version of the statute. Under the plain language of Section 1–14–15(A), which defines the term deposit and surety bond for the purposes of Section 1–14–15(B), and in reading Section 1–14–15 as a whole, we hold that the district court erred in not granting Petitioners relief. However, we decline to remand to the district court to order relief, because a recount and recheck is impossible at this point, and, even if a change in New Mexico's election results would occur, it would have no effect on who is the President of the United States.

## III. THIS COURT'S JURISDICTION OVER PETITIONERS' CLAIM

### A. Petitioners' Right to Appellate Review of the District Court's Order

{18} This Court denied Petitioners' December 16, 2004, petition for a writ of mandamus, prohibition and/or superintending control on December 22, 2004. The State Canvassing Board argues that because the right to both a recount and recheck are exclusively statutory, this Court's denial of Petitioners' writ exhausted the only statutory remedy available to them. Petitioners claim that our denial of their writ does not preclude appellate review of the district court's December 15, 2004, order refusing to issue a writ of mandamus compelling action by the State Canvassing Board.

{19} Article VI, section 2 of the New Mexico Constitution guarantees an aggrieved party an absolute right to one appeal. Any aggrieved party in a civil action may appeal the final order of the district court to the New Mexico Supreme Court or Court of Appeals. NMSA 1978, § 39–3–2 (1966). The procedure to be followed by every appellant from a district court judgment is laid out in Rules 12–201 to 12–216 NMRA. Petitioners' writ of mandamus, prohibition and/or superintending control, which was denied by this Court, is a separate and distinct proce-

dure from the appellate review Petitioners are now seeking. The narrow circumstances in which the issuance of such a writ is appropriate help explain why we denied Petitioners' December 15, 2004, writ petition.

{20} The Election Code allows an applicant for recount or recheck to petition the district court for writ of mandamus to compel performance of required acts, such as compelling the State Canvassing Board to issue summonses to the precinct boards. Section 1–14–21. Like all other extraordinary writs, "[m]andamus is an extraordinary remedy which is available only in cases wherein other remedies fail or are inadequate." *Ellinwood v. Morales,* 104 N.M. 243, 245, 719 P.2d 821, 823 (Ct.App.1986). The Legislature has provided that the district court has "exclusive original jurisdiction in all cases of mandamus." *See* NMSA 1978, § 44–2–3 (1884). Although this Court has exercised original jurisdiction in cases other than those provided by statute, *see State ex rel. Clark v. Johnson,* 120 N.M. 562, 569, 904 P.2d 11, 18 (1995), we have done so when we were satisfied that exercising original jurisdiction was appropriate, *id.* Because a writ of mandamus from this Court is appropriate only in limited circumstances, the denial of Petitioners' petition for a writ "does not preclude appellate review of the trial court's action and does not necessarily reflect upon the merits of [Petitioners'] contentions for purposes of this appeal." *State v. House,* 1999–NMSC–014, ¶ 25, 127 N.M. 151, 978 P.2d 967. *See also State v. Ware,* 115 N.M. 339, 343, 850 P.2d 1042, 1046 (Ct.App.1993) ("The denial of a writ of prohibition does not necessarily mean that the Supreme Court reached the merits of the issue argued in support of the writ, especially where there exists an adequate remedy at law."). Finally, "in all cases of proceedings by mandamus in any district court of this state, the final judgment of the court thereon shall be reviewable by appeal . . . in the same manner as now provided by law in other civil cases." NMSA 1978, § 44–2–14 (1899).

{21} In Petitioners' petition to this Court for extraordinary relief, they claimed they had no plain or speedy alternative remedy at law. Yet they did have a right of appeal, and

as this appeal illustrates, the Court of Appeals may, under certain circumstances, transfer an appeal to this Court. This Court denied Petitioners' requested relief without comment. We are not persuaded that on direct appeal Petitioners should be denied appellate review of the relief they originally requested by way of an extraordinary writ, even though that relief cannot be ordered at this time. As a result, we reach the merits of Petitioners' claim.

**B. Petitioners' Claim is Not Moot**

{22} Having found that Petitioners are entitled to a direct review of the district court's order, we must now decide whether Petitioners are still entitled to any relief. The State Canvassing Board contends that Petitioners' claim is moot because a recount and recheck of the 2004 presidential election results are no longer possible, the result of the 2004 presidential election would not be affected by a change in results in New Mexico, and New Mexico's electoral college votes have already been cast and recorded. While both Petitioners and the State Canvassing Board acknowledge that the 2005 amendment to Section 1–14–15(B) does not apply to Petitioners' claim, the State Canvassing Board maintains Petitioners' claim is also moot because the amendment clarifies legislative intent by explicitly conferring the authority that the State Canvassing Board implicitly held under the 2001 version of Section 1–14–15(B).

{23} "As a general rule, this Court does not decide moot cases." *Gunaji v. Macias,* 2001–NMSC–028, ¶ 9, 130 N.M. 734, 31 P.3d 1008; *see also Mowrer v. Rusk,* 95 N.M. 48, 51, 618 P.2d 886, 889 (1980). "A case is moot when no actual controversy exists, and the court cannot grant actual relief." *Gunaji,* 2001–NMSC–028, ¶ 9, 130 N.M. 734, 31 P.3d 1008 (quoted authority omitted). Two mootness exceptions exist, however. We may review moot cases that (1) present issues of substantial public interest or (2) which are capable of repetition yet evading review. *Id.* ¶ 10. Petitioners claim that their case is entitled to review under both exceptions. We address each exception to mootness in turn.

### 1. Clarification of the Election Code is an Issue of Substantial Public Interest

{24} Petitioners argue the case is of substantial public interest because it implicates the guarantee of "free and open" elections under article II, section 8 of the New Mexico Constitution ("All elections shall be free and open, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage."). Based on the statutory language of either the pre-amendment or post-amendment version of Section 1–14–15, which entitles candidates to a recount or recheck, Petitioners argue the Legislature has given a statutory directive to ensure the transparency of election process. The State Canvassing Board generally claims that Petitioners' case is moot because the voting machines used in the 2004 election have been cleared and a change in New Mexico's election results cannot affect the national results in the 2004 presidential election, but the State Canvassing Board does not specifically address the issue of substantial public interest.

{25} In *Gunaji*, an election recount case, this Court found errors on election ballots cast on a single voting machine to be of substantial public interest. 2001–NMSC–028, ¶ 10, 130 N.M. 734, 31 P.3d 1008. In that case, the election ballots for a Senate seat and a County Commissioner seat cast on the voting machine failed to contain the correct names of the candidates for those positions. *Id.* ¶ 2. Before the error was discovered in the voting machine, sixty-six votes were cast. *Id.* ¶ 3. The results of both races were close enough for the error in these sixty-six votes to change the outcome of the election. *Id.* The Court found *Gunaji* to raise issues of substantial public interest because the case required the Court to determine the appropriate means to contest an election and what remedy was available when the error could change the outcome. *Id.* ¶ 10.

{26} Petitioners' appeal raises similar concerns about our Election Code and potential error in the 2004 presidential election. First, Petitioners claim error in this case has the ability to change the winner of New Mexico's presidential election from President Bush to Senator Kerry. Second, the State Canvassing Board is exercising authority to condition the issuance of summonses to precinct board members that it had not exercised previously. These issues raise concerns regarding how recounts will be handled in future elections and are of substantial public interest. The importance of recounts is clear when considered in the context of the last two presidential elections.

{27} Our country experienced very close and contentious presidential elections in both 2000 and 2004. In 2000, Americans witnessed a fury of legal protests to the Florida presidential election results from the nominees of both the Democratic and Republican parties that ended up before the United States Supreme Court. *See Bush v. Gore,* 531 U.S. 98, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000). That litigation included Florida Supreme Court interpretation of Florida's election contest and recount statutes, and interaction between state and federal law in presidential election contests. *Id.* at 100–03, 121 S.Ct. 525. Then, in 2004, the presidential election again turned on the results in one state, and threats of legal challenges to the vote counting again loomed. *See generally* Daniel P. Tokaji, *Early Returns on Election Reform: Discretion, Disenfranchisement, and the Help America Vote Act,* 73 Geo. Wash. L.Rev. 1206, 1206 (2005) (noting the margin of victory in Ohio was large enough to "overcome any legal challenges that might have arisen from uncounted provisional votes, ambiguously marked 'hanging chad' punch card ballots, and lengthy lines that may have discouraged many citizens from voting").

{28} With this background of close and contentious elections, it is undeniable that clarification of the recount and recheck provisions of the Election Code is a matter of substantial public interest. As a result, we reach the merits of Petitioners' appeal.

### 2. The State Canvassing Board's Requirement of an Advance of the Full Payment of Recount and Recheck Costs is Capable of Repetition Yet Evading Review

{29} While the substantial public interest in this issue allows us to reach the

merits of this case, we choose to address the second exception to mootness, issues capable of repetition yet evading review, because of the Legislature's action in this case. The State Canvassing Board's act of conditioning a recount or recheck on the advance payment of the entire estimated costs of the recount and recheck is capable of repetition yet evading review for two reasons: (1) the short statutory time frame for election contests, recounts, and rechecks, as we saw in the 2000 presidential election, make judicial review of error or fraud difficult; and (2) the Legislature's amendment to Section 1–14–15(B) is unconstitutional and the 2001 version of the statute is still effective, therefore, the State Canvassing Board's actions under the 2001 version of Section 1–14–15(B) may be repeated. We squarely address the second reason in our review of the constitutionality of the 2005 amendment, in part IV(B) and (C)(1).

{30} In *Gunaji*, this Court found the human error in the election process was capable of repetition yet evading review because terms of office may expire before this Court could address whether errors had occurred. 2001–NMSC–028, ¶ 10, 130 N.M. 734, 31 P.3d 1008. In this case, Section 1–14–14(A) allows "any candidate for any office for which the state canvassing board or county canvassing board issues a certificate of nomination or election" to petition for a recount and recheck. Therefore, any candidate could be a future applicant in the same position as Petitioners in this case. Because of the broad applicability of Section 1–14–14(A) and the State Canvassing Board's belief in its authority to condition a recount or recheck on the entire estimated costs of the recount or recheck, the State Canvassing Board's action is capable of repetition.

{31} The term of office has not expired, as it did in *Gunaji*, but the short time frame provided for election contests, recounts, and rechecks also make Petitioners' claim an issue capable of evading review. Unlike the 2000 presidential election contest, this Court is not faced with the pressure of a decision that will change the result of the election, as were the United States Supreme Court and the Florida Supreme Court. However, our Election Code also has numerous deadlines that future protestants to an election must meet that could place this Court in a situation where time would be of the essence. *See* NMSA 1978, § 1–13–13(A) (1979) (requiring county canvassing boards to declare results ten days from the election date); NMSA 1978, § 1–13–15 (1977) (requiring the state canvassing board to declare the results for elections on the third Tuesday after each election); NMSA 1978, § 1–14–3 (1971) (requiring that a complaint to contest an election must come no later than thirty days from the issuance of the certificate of election).

{32} As a result, we reach the merits of Petitioners' appeal because the State Canvassing Board's action of conditioning a future petitioner's application for a recount or recheck on the full estimated costs of the recount or recheck is capable of repetition yet evading review.

## IV. STATE CANVASSING BOARD'S AUTHORITY UNDER THE ELECTION CODE TO CONDITION A RECOUNT AND RECHECK ON THE ADVANCE PAYMENT OF THE ENTIRE ESTIMATED COST

### A. Standard of Review

{33} Both Petitioners and the State Canvassing Board agree that this is a case of statutory interpretation. "We review questions of statutory interpretation de novo." *State v. Rowell*, 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995).

{34} The parties disagree as to what interpretation the statute must be given. Petitioners ask us to rely on the plain language of the statute. "In construing a particular statute, a reviewing court's central concern is to determine and give effect to the intent of the legislature." *State ex rel. Klineline v. Blackhurst*, 106 N.M. 732, 735, 749 P.2d 1111, 1114 (1988).

We will construe the entire statute as a whole so that all the provisions will be considered in relation to one another. Statutes must be construed so that no part of the statute is rendered surplusage or superfluous. The complement of the pre-

ceding rule is that we will not read into a statute or ordinance language which is not there, particularly if it makes sense as written. We will not depart from the plain wording of a statute, unless it is necessary to resolve an ambiguity, correct a mistake or an absurdity that the Legislature could not have intended, or to deal with an irreconcilable conflict among statutory provisions.

*Regents of Univ. of N.M. v. N.M. Fed'n of Teachers*, 1998–NMSC–020, ¶ 28, 125 N.M. 401, 962 P.2d 1236 (quoted authority omitted). The State Canvassing Board argues that, as an administrative agency, it is entitled to deference in interpreting Section 1–14–15. This Court "will accord some deference to the agency's interpretation, especially if the legal question implicates agency expertise." *Id.* ¶ 17 (quoted authority omitted). We conclude, as discussed in detail later, that the State Canvassing Board's claim to deference lacks merit. We look to the intent of the Legislature as revealed by the text of Section 1–14–15 in resolving the issue on appeal.

**B. The 2005 Amendment to Section 1–14–15(B) is an Unconstitutional Delegation of Legislative Power to the State Canvassing Board[2]**

{35} Both Petitioners and the State Canvassing Board agree that Petitioners' claim is unaffected by the Legislature's amendment, but the question is whether future applicants for a recount or recheck would be subject to the State Canvassing Board's discretionary authority. On July 1, 2005, while this case was pending before this Court and before oral argument, the Legislature amended Section 1–14–15(B) as follows:

The deposit or surety bond shall be security for the payment of the costs and expenses of the recount or recheck in case the results of the recount or recheck are not sufficient to change the results of the election. *The state canvassing board may condition the issuance of the summons on a receipt of a portion of or the full estimat-*

*ed costs of the recount or recheck to ensure sufficient security.*

(Emphasis added.).

{36} The Legislature's intent is clear in the plain language of the amendment: the State Canvassing Board has the authority to condition a recount or recheck on the full estimated costs of the recount or recheck for future applicants. The State Canvassing Board argues that this amendment settles the question of its authority to condition the issuance of summonses on payment of the entire estimated cost of the recount, both before and after the effective date of the amendment. Petitioners note that the amendment is unconstitutional on its face, and as a result, the pre-amended version of Section 1–14–15(B) is still in effect. Petitioners make three arguments with respect to the 2005 amendment's unconstitutionality: (1) it is an unconstitutional delegation of legislative power because the State Canvassing Board has no standards to guide its discretion in requiring advance payment of any costs; (2) it violates the Equal Protection Clause, because the amendment allows the State Canvassing Board to exercise authority to arbitrarily distinguish between similarly situated petitioners for a recount, implicating the fundamental right to vote; and (3) it violates substantive due process because petitioners are left without notice as to how much of a deposit they must provide in order for the State Canvassing Board to authorize a recount or recheck, unfairly prejudicing minor political party candidates. In holding the 2005 amendment to Section 1–14–15(B) unconstitutional, in the interest of judicial restraint, we choose to focus only on Petitioners' nondelegation argument: the Legislature's unconstitutional delegation of power in giving the State Canvassing Board arbitrary and unbridled authority.

{37} Preliminarily, we must address Petitioners' ability to challenge the constitutionality of the 2005 amendment. We acknowledge that Petitioners have brought their claim under the pre-amended 2001 version of Section 1–14–15(B), which means the claim is

---

**2.** This issue also addresses whether the State Canvassing Board's authority to condition a recount and recheck on an advance payment of the

entire estimated cost is capable of repetition yet evading review.

unaffected by the Legislature's 2005 amendment. The Uniform Statute and Rule Construction Act expressly prohibits an amended statute from having any effect on a pending action or proceeding. NMSA 1978, § 12-2A-16(A), (B) (1997). We reiterate that neither Petitioners nor the State Canvassing Board claim that the amendment affects the cause of action, but both parties address the amendment in terms of whether a claim such as Petitioners' is capable of repetition yet evading review. The State Canvassing Board has recognized the importance of the issues in this case and has chosen to waive its standing and mootness arguments only to Petitioners' ability to challenge the Section 1-14-15(B) 2005 amendment.

{38} While we have not previously recognized a private party's standing to invoke this Court's power to resolve questions of the constitutionality of a statutory amendment in appellate review, this Court has recognized its discretionary authority to "grant standing to private parties to vindicate the public interest in cases presenting issues of great public importance." *Baca v. N.M. Dep't of Pub. Safety*, 2002-NMSC-017, ¶ 3, 132 N.M. 282, 47 P.3d 441 (per curiam) (quoted authority omitted). In *Baca*, a mayor of Albuquerque petitioned this Court for a writ of mandamus to prohibit the Department of Public Safety from enforcing certain provisions of the Concealed Handgun Carry Act. *Id.* ¶ 1. After oral argument, but while the case was still pending, the mayor was succeeded by a new mayor. *Id.* ¶ 2. The new mayor submitted a motion to replace the former mayor on the writ and to dismiss his predecessor's writ. *Id.* This Court refused the new mayor's motion to dismiss, granting standing to the former mayor, as a private individual, to "invoke [our] power ... to resolve constitutional questions and enforce constitutional compliance [in order] to vindicate the public interest in cases presenting [an issue] of great public importance." *Id.* ¶ 3.

{39} As stated, the issue of clarifying our Election Code, especially in the current political climate, make this a case of great public importance. The 2005 amendment to Section 1-14-15(B) attempts to confer the very authority the State Canvassing Board claims to have had under the 2001 version of the statute, and that the district court agreed was implicit in Section 1-14-15. Consequently, Petitioners' argument challenging the State Canvassing Board's discretionary authority under the 2001 version of Section 1-14-15(B) would be the same under the 2005 amended version. Even though the 2005 amendment does not affect Petitioners' claim, because future applicants for recounts or rechecks would make an argument identical to Petitioners' claim, common sense demands review of the amendment. We acknowledge that cases conferring standing have generally arisen in the context of our original jurisdiction in mandamus. *See, e.g., Baca*, 2002-NMSC-017, ¶ 3, 132 N.M. 282, 47 P.3d 441; *State ex rel. Sego v. Kirkpatrick*, 86 N.M. 359, 363, 524 P.2d 975, 979 (1974). Nonetheless, the individual facts of this case and the great public interest involved in Petitioners' claim compel us to invoke our power to resolve the constitutionality of the 2005 amendment to Section 1-14-15(B).

{40} We now turn directly to the 2005 amendment's unconstitutionality under the nondelegation doctrine. The New Mexico Constitution provides for the separation of powers.

> The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments, shall exercise any powers properly belonging to either of the others, except as in this constitution otherwise expressly directed or permitted.

N.M. Const. art. III, § 1. It is this principle of separation of powers and the limitations on the Legislature's ability to transfer its power to other departments that is the basis of the nondelegation doctrine. *See* Black's Law Dictionary 438 (7th ed.1999) (delegation doctrine).

{41} The nondelegation doctrine limits, but does not completely prevent, the Legislature from vesting a large measure of discretionary authority in administrative officers and bodies. "There are many powers so far legislative that they may properly be exercised by the legislature, but which may

nevertheless be delegated, since the legislature may delegate any technically nonlegislative power which it may itself lawfully exercise." *State v. Spears,* 57 N.M. 400, 405, 259 P.2d 356, 360 (1953) (quoted authority omitted). The Legislature may not vest unbridled or arbitrary authority in an administrative body, however, and must provide reasonable standards to guide it. *City of Santa Fe v. Gamble–Skogmo, Inc.,* 73 N.M. 410, 417, 389 P.2d 13, 18 (1964). In the past, this Court has found proper delegation of legislative authority in cases where administrative discretion occurs within a governmental scheme, policy, or purpose, *Spears,* 57 N.M. at 406, 259 P.2d at 360, but "[w]hen the scope increases to immense proportions ... the standards must be correspondingly more precise." *State ex rel. Schwartz v. Johnson,* 120 N.M. 820, 825, 907 P.2d 1001, 1006 (1995) (quoted authority omitted). "The essential inquiry is whether the specified guidance sufficiently marks the field within which the administrator is to act so that it may be known whether [the administrator] has kept within it in compliance with the legislative will." *Id.* (quoted authority omitted). Also "the fact that [an agency acts] only under certain self-imposed restraints can in no way serve to supply what has been omitted. It is not what has been done but what can be done under a statute that determines its constitutionality." *State ex rel. Holmes v. State Bd. of Fin.,* 69 N.M. 430, 440, 367 P.2d 925, 932 (1961).

{42} In *Spears,* the defendant was charged with engaging in business as a real estate broker without a license. 57 N.M. at 403, 259 P.2d at 358. The defendant challenged the constitutionality of the Legislature's delegation to the New Mexico Real Estate Board to accept real estate licenses and to develop a qualifying examination to determine an applicant's qualifications. *Id.* at 403–04, 259 P.2d at 358–59. This Court, finding the Legislature's delegation of power to the New Mexico Real Estate Board constitutional, noted the law carried out a legislative scheme, policy, and purpose by its own terms. *See id.* at 406, 259 P.2d at 360. The law

> provide[d] for the appointment of a board, made up of persons experienced in the real estate business, ... and to which is committed the power to make and enforce any

and all rules and regulations to carry out the provisions of the act and of prescribing such reasonable written examinations of such scope as to determine the qualifications of applicants.

*Id.* at 405, 259 P.2d at 360. Because the Board's statutorily authorized actions did not "involve the exercise of primary and independent discretion, but only determin[ations] with[in] defined limits, and subject to review, [of] some fact upon which the law by its own terms operates, such regulation or action" was constitutional. *Id.* at 406, 259 P.2d at 360.

{43} In *Schwartz,* the issue was whether the Legislature, by statute, had intended to allow the governor to regulate the periodic allotment of funds to state agencies based on the recurring needs of state agencies or give the executive the discretion to base allotments on fiscal policy. *Schwartz,* 120 N.M. at 821, 907 P.2d at 1002. The governor argued that the Legislature had delegated allotment authority to him, based on a statute that gave the state budget division authorization to provide regulations for the periodic allotment of funds expended by any state agency. *Id.* at 823, 907 P.2d at 1004. The governor believed such authority allowed him to consider fiscal policy when making allotment decisions, such as the maintenance of general-fund reserves. *Id.* at 824, 907 P.2d at 1005. The Court, questioning whether the statute explicitly authorized the governor to consider fiscal policy, found that the statute contained few if any standards to direct the governor's discretion in reducing allotments. *Id.* at 825, 907 P.2d at 1006. While the governor claimed self-restraint when determining allotments, the Court found that was insufficient to cure the unconstitutional legislative delegation of authority to the governor. *Id.*

{44} The State Canvassing Board argues that it is an administrative agency, and consequently this Court should give great deference to its decision to require full or partial payment of a recount. However, deference is not appropriate in this case. Unlike the real estate business experts who composed the New Mexico Real Estate Board in *Spears,* the State Canvassing Board is composed of the governor, the secretary of state, and the chief justice of the supreme

court. N.M. Const. art. V, § 2. While all three are distinguished, high-ranking government officials, only the Secretary of State is an expert in the area of voting or elections. Also, as in *Spears,* while the Election Code does allow the Secretary of State to make rules and regulations to carry out the purposes of the Election Code, NMSA 1978, § 1–2–1(1979), the State Canvassing Board's actions are explicitly statutorily provided for by the Legislature. The State Canvassing Board meets to conduct the canvass, *see* NMSA 1978, § 1–13–15 (1977), issue certificates of elections or nominations, *see* NMSA 1978, § 1–13–16 (1979), and examine election returns and certificates issued by the county canvassing boards, *see* NMSA 1978, § 1–13–18 (1969). It also conducts a ministerial oversight function while checking for error and fraud when approving the canvass of votes. *See generally* §§ 1–13–15 to 1–13–17. The State Canvassing Board, however, is not legislatively directed to develop standards for elections.

{45} The Legislature's attempted delegation of authority to the State Canvassing Board is made more explicit than the delegation claimed by the governor in *Schwartz,* but, as we held in that case, the Legislature in this case has failed to provide the State Canvassing Board with adequate standards to guide its discretion. The State Canvassing Board argues that the Legislature's guiding scheme, policy, or purpose is the interest of protecting New Mexico's taxpayers from seemingly frivolous recounts and rechecks, implicit in the use of the term "security" in the amended version of Section 1–14–15. However, nowhere in the Election Code does the Legislature explicitly state an interest to protect New Mexico taxpayers or the state fisc. Any legislative guidance given to the State Canvassing Board under this "guiding" policy is attenuated at best. Even if we were to recognize a legislative directive, much like the authority claimed by the governor in *Schwartz,* the Legislature has not provided the State Canvassing Board with any standards to exercise its discretion. As written, the 2005 amendment is an unconstitutional delegation of legislative power to the State Canvassing Board.

{46} The State Canvassing Board also suggests that it has inherent authority to promulgate a rule to implement the language in Section 1–14–15(B) by considering the costs of a recount or recheck mentioned in Section 1–14–15(D). However, as in *Holmes* and *Schwartz,* no self-regulation by the State Canvassing Board can cure the unconstitutional delegation. *Holmes,* 69 N.M. at 440, 367 P.2d at 932; *Schwartz,* 120 N.M. at 825, 907 P.2d at 1006.

{47} As a result, we must conclude that the 2005 amendment to Section 1–14–15(B) is unconstitutional. The Legislature cannot give the State Canvassing Board unfettered discretion in determining which petitioners seeking a recount or recheck must pay for the full cost, and which must pay only a percentage of that cost. The Legislature may certainly give the State Canvassing Board some discretion in weighing the competing policy interests, such as the interest of a fair election and the protection of the treasury from allegedly frivolous requests for recounts and rechecks at issue in this case. *Cf.* Or.Rev.Stat. § 258.150 (2003) (giving the secretary of state the responsibility for conducting an accurate recount in the "shortest time at the least expense"). The Legislature could also explicitly increase the deposit or surety bond amount required by Section 1–14–15(A) for a recount or recheck to reflect the entire cost of the procedures, or a set percentage thereof. *See* Colo.Rev.Stat. § 1–10.5–106(2) (2005) (mandating the election official who will conduct the recount to determine the entire cost and collect that amount before the recount is conducted). However, this type of discretion is so largely policy-based that it is best left to the Legislature to delineate specific standards for the State Canvassing Board to apply in exercising this discretion. The Legislature can weigh the policy concerns and determine what this standard should be.

**C. The State Canvassing Board's Authority to Require Advance Payment of the Entire Estimated Costs of the Recount and Recheck Under the 2001 Pre-amended Version of Section 1–14–15(B)**

**1. The Effectiveness of the 2001 Version of Section 1–14–15(B)**

{48} Because the 2005 amendment is unconstitutional, the 2001 version of Sec-

tion 1–14–15(B) is still in effect. The Uniform Statute and Rule Construction Act allows the remainder of a statute to be effective in cases where provisions in that statute are held invalid. NMSA 1978, § 12–2A–9 (1997). The question is whether the 2001 version of Section 1–14–15(B) is severable from the 2005 amendment. The test to determine the severability of an invalid section from the rest of the statute is settled.

> It is well established in this jurisdiction that a part of a law may be invalid and the remainder valid, where the invalid part may be separated from the other portions, without impairing the force and effect of the remaining parts, and if the legislative purpose as expressed in the valid portion can be given force and effect, without the invalid part, and, when considering the entire act it cannot be said that the legislature would not have passed the remaining part if it had known that the objectionable part was invalid.

*Baca*, 2002–NMSC–017, ¶ 8, 132 N.M. 282, 47 P.3d 441 (quoted authority omitted).

■ {49} Addressing the first prong, we note the remainder of Section 1–14–15(B) (2005) is identical to Section 1–14–15(B) (2001). The 2001 version of Section 1–14–15(B) was effective, independent of the 2005 amendment, for four years. *See* 2001 N.M. Laws, ch. 109, § 1. We address the second prong by acknowledging another section of the Uniform Statute and Rule Construction Act, which reads, "[a] statute or rule that is revised, whether by amendment or by repeal and reenactment, is a continuation of the previous statute or rule and not a new enactment to the extent that it contains substantially the same language as the previous statute or rule." NMSA 1978, § 12–2A–14 (1979). Because the 2005 amendment added only one sentence to the original version of the statute, under the Uniform Statute and Rule Construction Act, the remainder of Section 1–14–15(B) (2005) can be given the same effect as the 2001 version of the statute. With respect to the third prong, again noting that the 2005 amendment to Section 1–14–15(B) added only one sentence to the 2001 version of the statute, we infer the Legislature would choose to have the remainder of the Section 1–14–15 continue to be effective. Therefore, the 2001 version of Section 1–14–15(B) is still effective because its text and meaning remain substantively unaffected by both the 2005 amendment and our subsequent striking of the amendment on the basis of unconstitutionality.

{50} We now turn to whether the State Canvassing Board had the authority, under the 2001 version of Section 1–14–15(B), to condition the recount and recheck on advance payment of the entire estimated cost of the procedure.

**2. Analysis of the State Canvassing Board's Authority Under the 2001 Version of Section 1–14–15(B)**

{51} Section 1–14–15 (2001) states:

A. An applicant for a recount shall *deposit* with the proper canvassing board or, in the case of an office for which the state canvassing board issues a certificate of nomination or election, with the secretary of state fifty dollars ($50.00) in cash, or a sufficient *surety bond* in an amount equal to fifty dollars ($50.00), for each precinct for which a recount is demanded. An applicant for a recheck shall *deposit* with the proper canvassing board or, in the case of an office for which the state canvassing board issues a certificate of nomination or election, with the secretary of state ten dollars ($10.00) in cash, or a sufficient *surety bond* in an amount equal to ten dollars ($10.00), for each voting machine to be rechecked.

B. The *deposit or surety bond shall be security* for the payment of the costs and expenses of the recount or recheck in case the results of the recount or recheck are not sufficient to change the results of the election.

C. *If it appears that error or fraud sufficient to change the winner of the election has been committed, the costs and expenses of the recount or recheck shall be paid by the state* upon warrant issued by the secretary of finance and administration supported by a voucher of the secretary of state, or shall be paid by the county upon warrant of the county clerk from the gen-

eral fund of the county, as the case may be.

D. *If no error or fraud appears to be sufficient to change the winner, the costs and expenses for the recount or recheck shall be paid by the applicant.* Costs shall consist of any docket fees, mileage of the sheriff in serving summons and fees and mileage of precinct board members, at the same rates allowed witnesses in civil actions. If error or fraud has been committed by a precinct board, the board members shall not be entitled to such mileage or fees.

(Emphasis added.).

{52} The State Canvassing Board asks this Court to give it deference in its interpretation of Section 1–14–15(B) to require advance payment of the entire estimated cost of the recount and recheck, not just the costs mentioned in Section 1–14–15(A), as reasonable because otherwise the State of New Mexico would need to incur a $1.4 million expense when neither Petitioner is likely to succeed as a result of the recount and recheck. The State Canvassing Board also argues that the $108,670 required for a statewide recount and recheck under Section 1–14–15(A) only entitles Petitioners to have their petition considered, not to have the summonses issued. Petitioners respond that the plain language of the statute, which defines "deposit" and "surety bond" in Section 1–14–15(A), is all that is required as "security" for purposes of Section 1–14–15(B). Additionally, Petitioners note that Section 1–14–15(C) only requires a change in the winner to result from the recount and recheck, not that either Petitioner be found the winner, for the state to incur the costs of the recount. Only if error or fraud does not result in a change of the winner after the recount, i.e., President Bush is still found the winner, would Petitioners be responsible for the cost of the recount and recheck. Section 1–14–15(D). Lastly, Petitioners state the plain language of Section 1–14–16(A) mandates that the State Canvassing Board issue the summonses to the respective precinct boards "immediately after the filing of the application."

{53} Section 1–14–15(A) defines "deposit" and "surety bond." We conclude that the definition in Section 1–14–15(A) applies to the term "deposit or surety bond [that] shall be security" in Section 1–14–15(B). The plain language of the statute is the clearest indication of the Legislature's intent. *Pub. Serv. Co. of N.M. v. N.M. Pub. Util. Comm'n*, 1999–NMSC–040, ¶ 18, 128 N.M. 309, 992 P.2d 860. The plain language of Section 1–14–15(D) clearly states the applicant is only responsible for the costs of the recount or recheck if the error or fraud is not sufficient to change the winner. If a change in the winner does result, the State is liable for the costs. Section 1–14–15(C). Also, contrary to the State Canvassing Board's claim that Section 1–14–15(A) only entitles Petitioners to a review of their application, the plain language of Section 1–16–16(A) compels mandatory action by the State Canvassing Board to issue summonses to the precinct boards named in Petitioners' application. *See* NMSA 1978, § 1–1–3 (1969) (defining "shall" in the Election Code as mandatory).

{54} While the State Canvassing Board argues that the Legislature made its intent to provide the State Canvassing Board with discretionary authority explicit through the 2005 amendment, we disagree on the same grounds as stated in finding the amendment unconstitutional. The State Canvassing Board argues we should give deference to its interpretation as an administrative agency, but because this is exclusively a case of interpretation of the statute, we need not defer to the State Canvassing Board's interpretation. *See Regents of Univ. of N.M.*, 1998–NMSC–020, ¶ 17, 125 N.M. 401, 962 P.2d 1236. We decline to depart from the plain language of the Section 1–14–15 because there is no ambiguity within this statute. Petitioners have deposited the amount required under Section 1–14–15(A). This is the "security" the Legislature has mandated before a recount or recheck can begin. When reading Section 1–14–15 as a whole, the Legislature has intended for the State Canvassing Board to perform the recount or recheck when paid a deposit or surety bond as defined in Section 1–14–15(A). *See also* § 1–14–16(A) (ordering the State Canvassing Board to act "[i]mmedi-

ately after filing of the application for recount or recheck").

{55} Finally, the State Canvassing Board is concerned that holding for Petitioners in this case will overrule *Montoya v. McManus,* 68 N.M. 381, 362 P.2d 771 (1961), and *Reese v. Dempsey,* 48 N.M. 417, 152 P.2d 157 (1944). We disagree.

{56} In *Montoya,* a petitioner in an election contest filed a poverty affidavit instead of a $25,000 bond to cover the costs associated with the procedure as ordered by the district court. 68 N.M. at 383, 362 P.2d at 772. However, this Court, relying on the plain reading of the election contest statute, noted that the statute ordered the district court to require the petitioner to pay a deposit to cover the costs of the procedure, leaving no mention of the applicability of the poverty statute. *Id.* at 386–87, 362 P.2d at 774–75. Additionally, the *Montoya* court resolved an ambiguity with the term "bond," where petitioner claimed "bond" was merely a written promise to pay, *id.* at 388, 362 P.2d at 776, by stating "the 'bond' for the payment of costs required by § 3–9–10 . . . must be such a bond as affords security for the payment of costs," *id.* at 391, 362 P.2d at 777. The State Canvassing Board avers that Petitioners' payment of only the costs under Section 1–14–15(A), and not the entire cost of the recount, amounts to a mere promise to pay. The State Canvassing Board also urges this Court to adopt the *Montoya* court's analysis of Section 3–9–10 as requiring security for the entire cost of the recount and recheck.

{57} The case before us differs from *Montoya* because the amount required to provide "security" for the recount and recheck are explicitly defined in Section 1–14–15(A) and (B). The "deposit" and "surety bond" that provide security under Section 1–14–15(B) do not include the costs stated in Section 1–14–15(D). Petitioners are not just promising to pay, but have paid $114,400, which is more than what the Legislature has explicitly required them to pay. Finally, relying on the plain language of Section 1–14–15(B), as the *Montoya* court relied on the language of Section 3–9–10, we note the State Canvassing Board did not have the authority to require

anything above the amount the Legislature statutorily required. Therefore *Montoya* is not overruled here.

{58} In *Reese,* a candidate in a primary election sought a writ of mandamus requiring the State Canvassing Board to perform duties in the canvassing of a primary election. 48 N.M. at 420, 152 P.2d at 158. The Legislature explicitly authorized the State Canvassing Board to perform these duties in the canvassing of a general election. *Id.* The Court, noting a legislative intent that the statute apply to primary elections, granted the writ ordering the State Canvassing Board to perform such duties in the primary election. *Id.* at 427, 152 P.2d at 163. The Court added that it would be proper for the State Canvassing Board to issue a writ of mandamus itself, ordering county clerks to provide the information the State Canvassing Board required to conduct the canvass, *id.* at 430, 152 P.2d at 165, although such authority was not explicit in the statute. *Cf. id.* at 431–32, 152 P.2d at 165–66. The Court refused to narrow the powers and duties of the State Canvassing Board to not include this authority, finding the Legislature had manifested such purpose and policy. *Id.* The State Canvassing Board urges us to view *Reese* as a recognition of judicial deference to its administrative decisions.

{59} In the pending case, reiterating our arguments about the propriety of judicial deference to administrative agencies in statutory construction cases, we disagree that *Reese* mandates judicial deference to determinations of the State Canvassing Board as an administrative agency. A legislative directive granting authority to the State Canvassing Board to complete the canvass does not give them the authority to condition a recount and recheck on the advance payment of the procedures' full estimated cost. This Court reiterates that the plain language of Section 1–14–15, read as a whole, only requires the deposit of the costs stated in Section 1–14–15(A), and Section 1–14–16 orders the State Canvassing Board to begin the recount and recheck procedures upon such payment. Our holding does not affect *Reese* because, unlike *Reese,* there exists no legislative policy or purpose granting the State

Canvassing Board such authority, and the Legislature's intent is clear in Section 1–14–15.

## VI. REMEDY

{60} Petitioners ask this Court to issue a declaratory judgment that the State Canvassing Board was without authority under the 2001 version of Section 1–14–15(B) to condition the recount and recheck on the payment of costs above those stated in Section 1–14–15(A), declare the 2005 amendment to Section 1–14–15(B) unconstitutional, and reverse and remand the case to the district court to enter an order requiring a recount and recheck. While we grant the first two prayers for relief, we decline to remand this case to the district court to enter an order requiring a recount and recheck of the 2004 presidential election returns. As has been stated, a change in the results of the 2004 New Mexico presidential election would not change who is the President of the United States. Even without New Mexico's five electoral college votes, George W. Bush still received 281 electoral votes, more than the 270 required to take office. Federal Register–Archives, http://www.archives.gov/federal-register/electoral-college/ votes/2000_2005. html# 2004. We also note that because new elections have occurred since the November 2, 2004, election, *see* NMSA 1978, §§ 1–13–21 (ordering the clearing of all voting machines thirty days after the state canvassing board adjourns), and 1–12–69 (1981) (ordering the destruction of the contents of all ballot boxes forty-five days after the state canvassing board adjourns), a recount or recheck is impossible at this point.

## VII. CONCLUSION

{61} We issue a declaratory judgment that the State Canvassing Board acted outside the plain language of Section 1–14–15(B) (2001) in requiring Petitioners' to pay $1.4 million for "security" when Section 1–14–15(A) expressly provided what was sufficient security. We hold the 2005 amendment to Section 1–14–15(B) to be an unconstitutional delegation of legislative authority, leaving the 2001 version in effect, but note that this opinion does not preclude the Legislature from conferring

such authority as long as explicit standards and policy are provided to guide the State Canvassing Board's discretion. While our holdings would ordinarily entitle Petitioners to a recount or recheck, we decline to order the district court to require a recount because it is now impossible to conduct a recount or recheck, and, even if a change in New Mexico's 2004 presidential election returns would result, this would have no effect on who is President.

{62} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Justice, PAMELA B. MINZNER, Justice, MICHAEL D. BUSTAMANTE, Chief Judge, (sitting by designation), JAMES J. WECHSLER, Judge, (sitting by designation).