This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**PHILIPP MERILLAT CORPORATION,**
**a Colorado Corporation,**

    **Plaintiff-Appellee,**

**v.**                              **No. A-1-CA-36068**

**CARL R. ELKINS, as Personal**
**Representative of the Estate of**
**Fred V. Elkins, Deceased,**

    **Defendant-Appellant,**

**and**

**ASPEN INVESTMENT PARTNERS,**
**LLC, a New Mexico Limited Liability**
**Company, WASHINGTON FEDERAL,**
**and ALL UNKNOWN CLAIMANTS OF**
**INTEREST IN THE PREMISES**
**ADVERSE TO THE PLAINTIFF,**

    **Defendants.**

**APPEAL FROM THE DISTRICT COURT OF CIBOLA COUNTY**
**Pedro G. Rael, District Judge**

Espinosa & Associates, P.C.
Richard D. Barish
Leonard G. Espinosa
Albuquerque, NM

for Appellee

Mason & Isaacson, P.A.
James J. Mason
Joshua M. Montagnini
Gallup, NM

for Appellant

**MEMORANDUM OPINION**

**BOHNHOFF, Judge.**

{1}     Defendant Carl R. Elkins (Elkins), as personal representative of the Estate of Fred V. Elkins (Decedent), appeals from an award of summary judgment in favor of Plaintiff Philipp Merillat Corporation (PMC). We affirm.

**BACKGROUND**

{2}     This is a memorandum opinion and, because the parties are familiar with the facts and procedural posture of the case, we set forth only such facts and law as are necessary to decide the issues raised.

{3}     The material facts of this case are undisputed. On August 1, 2006, Decedent sold sixteen tracts of land located in Cibola County, New Mexico, to Aspen Investment Partners, LLC (Aspen), which gave Decedent a mortgage (Mortgage) on the sixteen tracts. On August 9, 2006, Decedent recorded the Mortgage and

concurrently assigned it to the predecessors of Washington Federal. Decedent died in 2007.

{4}     Aspen subsequently defaulted on the Mortgage and also failed to pay property taxes from 2006 through 2013. On May 30, 2013, PMC purchased four of the sixteen tracts at a tax auction. (The four tracts will be referred to as "the Property.") After the taxes for 2006 through 2013 were paid from PMC's payment for the Property, the Property Tax Division of the State of New Mexico's Taxation and Revenue Department delivered deeds (Deeds) to PMC, granting and conveying to PMC "the former owner's interest in the . . . [P]roperty . . . *as of the date the state's lien for property taxes arose*, pursuant to the Property Tax Code, *that date being January 1, 2009* . . . and that interest being subject only to perfected interests in the real property existing *before the date the property tax lien arose*[.]" (Emphasis added.)

{5}     In October 2013, PMC filed suit against Elkins, Aspen, and Washington Federal to quiet title to the Property. On January 30, 2014, Washington Federal assigned the Mortgage back to Decedent's estate. Elkins thereafter brought a separate suit to foreclose on the Mortgage, which was consolidated with the quiet title action. PMC obtained a default judgment against Aspen, and Washington Federal disclaimed any interest in the Property.

{6} Elkins and PMC filed cross-motions for summary judgment, disputing the relative superiority of their respective interests in the Property. Elkins relied upon the language in the Deeds, arguing that they stated that the State's tax lien arose on January 1, 2009, and that because the Mortgage was perfected on August 9, 2006, PMC's title to the Property was subject to the Mortgage. PMC relied on provisions of New Mexico's Property Tax Code, NMSA 1978, §§ 7-38-1 to -93 (1973, as amended through 2018), arguing as follows: A tax lien attached to the tracts (including the Property) as of January 1, 2006, based on Aspen's failure to pay property taxes pursuant to Section 7-38-48(A). Accordingly, PMC took title subject only to perfected interests in the Property existing as of that date, pursuant to Section 7-38-65(A). Thus, PMC concluded, it took title to the Property free and clear of the Mortgage.

{7} The district court granted summary judgment in favor of PMC and against Elkins, agreeing with PMC that (1) a tax lien against the Property arose on January 1, 2006, pursuant to Section 7-38-48(A); (2) the tax lien was superior to Elkins' Mortgage; and (3) by operation of Section 7-38-65(A), PMC acquired the Property free and clear of the Mortgage because the property taxes were paid from the money PMC paid for the Property.[1]

---

[1]The district court entered "findings and conclusions" in reaching its decision. We remind the court that when ruling on a motion for summary judgment, a district court does not make findings and instead determines only whether there are any genuine issues of material fact. *See* Rule 1-056(C) NMRA; *see also Gardner-Zemke*

**DISCUSSION**

**A.     Standard of Review**

{8}     "[I]f no material issues of fact are in dispute and an appeal [of a grant of summary judgment] presents only a question of law, we apply de novo review and are not required to view the appeal in the light most favorable to the party opposing summary judgment." *City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶ 7, 146 N.M. 717, 213 P.3d 1146. "Statutory interpretation is an issue of law, which we review de novo." *N.M. Indus. Energy Consumers v. N.M. Pub. Regulation Comm'n*, 2007-NMSC-053, ¶ 19, 142 N.M. 533, 168 P.3d 105.

**B.     Analysis**

{9}     Statutes are to be construed in accordance with their plain meaning. *Cummings v. X-Ray Assocs. of N.M., P.C.*, 1996-NMSC-035, ¶ 44, 121 N.M. 821, 918 P.2d 1321 ("When interpreting statutes, [the courts'] responsibility is to search for and give effect to the intent of the [L]egislature. . . . Our understanding of legislative intent is based primarily on the language of the statute, and we will first consider and apply the plain meaning of such language."). In addition, "[w]e will construe the entire statute

*Co. v. State*, 1990-NMSC-034, ¶ 11, 109 N.M. 729, 790 P.2d 1010 (noting that the sole purpose of a summary judgment proceeding is to determine whether a genuine issue of material fact exists; it is not to be used to decide an issue of fact). However, the factual recitations in the district court's decision track PMC's statement of undisputed material facts, which Elkins did not dispute below.

as a whole so that all the provisions will be considered in relation to one another. Statutes must be construed so that no part of the statute is rendered surplusage or superfluous." *Cobb v. State Canvassing Bd.*, 2006-NMSC-034, ¶ 34, 140 N.M. 77, 140 P.3d 498 (internal quotation marks and citation omitted).

**1.      Section 7-38-48(A) Does Not Provide That a New Tax Lien Arises Every Year**

{10}    Section 7-38-48(A) states:

> [T]axes on real property are a lien against the real property from January 1 of the tax year for which the taxes are imposed. The lien runs in favor of the state and secures the payment of taxes on the real property and any penalty and interest that become due. The lien continues until the taxes and any penalty and interest are paid. The lien created by this section is a first lien and paramount to any other interest in the property, perfected or unperfected. The annual taxing process provided for in the Property Tax Code shall continue as to any particular property regardless of prior tax delinquencies or of pending protests, actions for refunds or other tax controversies involving the property, including a sale for delinquent taxes.

Elkins argues that the last sentence of this statute contemplates the creation of a new, separate tax lien for each unpaid tax year. We disagree.

{11}    First, the plain language of the last sentence of Section 7-38-48(A) means only that the process of annual tax accrual does not stop and instead continues, even if the tax is not paid in any one year or the taxpayer challenges the first year's tax. Nowhere in Section 7-38-48(A) is there any textual support for the proposition that a new tax lien arises if one year's accrued tax is not paid.

6

{12} Second, the second to last sentence of Section 7-38-65(A) provides that "[r]eal property may be sold for delinquent taxes at any time after the expiration of three years from the first date shown on the tax delinquency list on which the taxes became delinquent." Thus, property is sold only if taxes have been delinquent for three years. Under Elkins' theory, the three-year delay would give rise to three separate tax "liens." However, the Property Tax Code refers only to "lien" in the singular, as opposed to "liens" in the plural. *See* §§ 7-38-48, 7-38-65, 7-38-70. "When the Legislature has spoken with precision on a topic[,] . . . it is not the proper role of the judiciary to make plural that which is singular." *Rainaldi v. City of Albuquerque*, 2014-NMCA-112, ¶ 15, 338 P.3d 94. The Deeds also refer to the State's tax lien in the singular.

**2.      Section 7-38-65(A) Does Not Prohibit the State From Selling Property to Satisfy a Tax Lien That Arose More Than Four Years Earlier**

{13} Section 7-38-65(A) states:

> If a lien exists by the operation of Section 7-38-48 . . . , the department may collect delinquent taxes on real property by selling the real property on which the taxes have become delinquent. . . . Real property may be sold for delinquent taxes at any time after the expiration of three years from the first date shown on the tax delinquency list on which the taxes became delinquent. Real property shall be offered for sale for delinquent taxes either within four years after the first date shown on the tax delinquency list on which the taxes became delinquent or, if the department is barred by operation of law or by order of a court of competent jurisdiction from offering the property for sale for delinquent taxes within four years after the first date shown on the tax delinquency list on which the taxes became delinquent, within one year from the time

7

the department determines that it is no longer barred from selling the property[.]

Elkins argues that the quoted language from the last sentence of Section 7-38-65(A) obligated the State to sell the Property by 2010 to satisfy the tax lien created by the unpaid 2006 taxes. Because the Property was not sold until 2013, he contends that at that point the State could only sell it pursuant to the "new" tax liens that he contends separately arose in and after 2009.

**{14}** We disagree that Section 7-38-65(A) limits the State in its enforcement of tax liens. First, the section's initial sentence provides, "If a lien exists by the operation of Section 7-38-48, the department may collect delinquent taxes on real property by selling the real property on which the taxes have become delinquent." Section 7-38-65(A). There is no limit on the number of delinquent taxes that may be collected—all that is required is one or more years of unpaid taxes that are at least three years old.

**{15}** Second, while Section 7-38-65(A) imposes a four-year deadline for offering to sell property to satisfy a tax lien, "[f]ailure to offer property for sale within the time prescribed by Subsection A of this section shall not impair the validity or effect of any sale that does take place." Section 7-38-65(B).

**{16}** Third, the statute of limitations provided in the Property Tax Code, found at Section 7-38-81(A), states: "Property may not be sold and proceedings may not be initiated for the collection of property taxes that have been delinquent for more than

8

ten years." Under Elkins' construction of Section 7-38-65(A), the State could not collect property taxes older than four years. This would render Section 7-38-81 meaningless, contrary to the aforementioned rule of statutory construction.

**CONCLUSION**

{17}    For the foregoing reasons, we affirm the district court.

{18}    **IT IS SO ORDERED.**


_____

**HENRY M. BOHNHOFF, Judge**

**WE CONCUR:**


_____

**LINDA M. VANZI, Chief Judge**


_____

**STEPHEN G. FRENCH, Judge**